TOM TAYLOR v. STATE.

190 So. 691
Division B
Opinion Filed July 28, 1939

544

*Butt & Akridge,* for Plaintiff in Error;

*George Couper Gibbs,* Attorney General, and *Thomas J. Ellis,* Assistant Attorney General, for Defendant in Error.

PER CURIAM.—The plaintiff in error, Tom Taylor, was on the 12th day of October, 1938, indicted by a grand jury of Brevard County, Florida, for the murder of one James Wilson in said county on the 1st day of June, 1938. He was arraigned on said indictment and entered a plea of not guilty, and placed upon trial and was by a jury of Brevard County convicted of murder in the second degree and by the trial court sentenced to the State penitentiary at hard labor for a period of twenty years. From this judgment of conviction he has perfected his appeal to this Court, with a number of assignments of error, which are duly presented and argued in the brief by his counsel in this Court under six separate questions.

The first question presented involves assignments 2, 3, 4 and 5 and are each predicated on the order of the lower court in overruling and denying plaintiff in error's motion for a new trial. The brief of counsel here on this question the sufficiency of the evidence to sustain the verdict as found by the jury.

The evidence shows that the defendant and the deceased lived·in Paul Thompson's quarters located· in one of the outlying districts of and near the Town of Cocoa. The defendant came to Florida about thirty years ago from the State of South Carolina, and had worked continuously with the said Paul Thompson in his saw mill during this time, and at the time of the tragedy the defendant was 77 years of age. He was night watchman at the saw mill located near the quarters and made trips at regular intervals from his home to the saw mill, and in so doing, passed the house in which the deceased lived and was later killed. The defendant collected the weekly rents on the eight houses making up the Thompson quarters and maintained order but was not an officer of the law, but his authority so to do came from the owner of the quarters. The eight houses were occupied by white and colored people. The defendant and deceased are darkies.

Mahaley Wilson, wife of the deceased, was an eye witness to the tragedy. She testified that the defendant came to their home about 8:00 or 9:00 o'clock P. M., to collect the rent on the house in which they were living. The deceased did not have the money with which to pay it and a quarrel or dispute arose in which the deceased was shot through the heart in his own home by the defendant and died within a few minutes. The defendant admitted the shooting but contended that he shot the deceased in self defense and only to save his own life. The defendant's version of the difficulty is strongly corroborated by the testimony of Wallace Harris and wife, Mary Harris, and Albert Smith, who lived in the houses of the quarters and in close proximity to where the shooting occurred.

The evidence shows that shortly after the shooting officers and others went to the scene of the homicide, and there is a

sharp conflict or dispute in the testimony of the witnesses for the State and the group for the defendant. Some of the witnesses for the defendant testified the deceased had an axe at the time of the shooting, but the officers and State witnesses examined the house of the deceased and failed to find an axe. There was evidence that the deceased attacked the defendant with a heavy chair and the defendant shot the deceased to protect his own life. Other witnesses testified that objects appeared between where the witnesses were located and where the shooting occurred which obstructed the vision of the witnesses giving important testimony in behalf of the defendant. The deceased weighed about 190 or 200 pounds and was about 35 years of age, while the defendant was around 77 years of age and weighed considerably less than the deceased. There were conflicts or disputes as to whether or not Mahaley Wilson was drunk or sober at the time of the shooting. The defendant's excuse for being at the deceased's home was to quell a fuss or fight between the deceased and his wife. It is not necessary to give other details of the testimony offered in the lower court.

. Counsel for plaintiff in error contend that the evidence adduced was not sufficient to sustain the verdict of the jury, but that it is manifestly against the weight of the evidence and preponderates in favor of the defendant. The case of Bexley v. State, 59 Fla. 6, 51 So. 287, and Stanley v. Powers, 125 Fla. 322, 169 So. 861, are cited and have been duly considered by this Court.

Our construction of the testimony is that there is substantial evidence in the record to sustain the verdict as found by the jury. It is true that sharp conflicts and disputes appear, but these conflicts and disputes are questions of fact to be settled by the jury under appropriate instructions. If

the jury had given full credence to the testimony offered and relied upon by the defendant, then a verdict of not guilty would have been rendered, but the jury in weighing and considering the testimony, which it had a right to do, refused or declined to give the weight and credit to the testimony of the defendant as desired by him and his counsel, as shown by the verdict so rendered, as the indictment charged murder in the first degree and the verdict was for murder in the second degree.

The rule controlling an appellate court in considering the sufficiency of the evidence to support a verdict is not what it may think the jury ought to have done, or what such court may think it would have done had it been sitting as a jury in the case, but the rule is whether as reasonable men the jury could have found from the evidence such a verdict. If the jury as reasonable men could have found such a verdict based upon the evidence, then the ruling of the trial court in denying the motion for a new trial should not be disturbed.

If the record discloses evidence from which all the essential elements of a crime may legally have been found and upon the examination by this Court of the evidence it does not appear that the jury considering the evidence was influenced by considerations other than the evidence, the order of the trial court refusing to grant a new trial on account of the insufficiency of the evidence, or because the verdict is contrary to the evidence, will not be disturbed. This Court has no authority at law to substitute its conclusions for that of the jury in passing upon conflicts or disputes in the evidence. See Pickerson v. State, 94 Fla. 268, 113 So. 707; Bullard v. State, 95 Fla. 997, 117 So. 381.

Question two presented by counsel for plaintiff in error is predicated on questions propounded to witnesses during

the progress of the trial and are the basis of assignment of error number 13 and grounds 8 and 9 of the motion for a new trial. The trial court sustained objections to the following questions propounded to defendant's witness W. V. Maxwell, viz.: ,

"Q. How many times, within. the last two years and during the time that she and her husband lived on St. Charles Street in Cocoa, have you had the occasion to go out and see Mahaley in an effort to quiet her down—and cautioned her about getting drunk and disturbing the neighbors?"

"Q. Please state whether or not within the last two years while Mahaley was living on St. Charles Street in the City of Cocoa, you went to see Mahley on complaints made by her neighbors and got after her about being drunk and causing disturbances among her neighbors?"

"Q. Please state whether or not within the last two years and while Mahaley was living on St. Charles Street in the City of Cocoa, that you had complaints from her neighbors about her getting drunk and being rowdy."

While the State's witness. Mahley Wilson, was on the stand during the progress of the trial of the case, counsel for defendant propounded questions which it was contended were to test the credibility of the witness, but the trial court sustained an objection thereto made by the State Attorney and these questions are, viz.:

"Q. Isn't it true, Mahley, that your neighbors there in Cocoa when you lived on St. Charles Street, caused your removal and your husband's removal from that community because you were getting drunk and raising rows?" ,

"Q. So I believe you said that neither the police there in the City of Cocoa, or any of your neighbors had any

trouble with you while you were living on St. Charles Street in the City of Cocoa, on account of your getting drunk?"

It will be observed the questions, *supra,* called into question the habit of drinking intoxicating liquors on the part of Mahaley Wilson over a period of some two years prior to the date of the homicide. It appears that the proposed testimony of the witness Maxwell is based upon collateral rather than material or relevant testimony and there was no error in sustaining the objection to the questions propounded to him. It is clear that the question involved here is not about the drinking proclivities of the witness Mahaley Wilson for some two years prior to the date of the homicide, but the real point that the lower court and jury were trying to determine was whether or not the witness Mahaley Wilson was telling the truth about the murder of her husband. While it may be material to show whether or not she was drunk or sober on the night of the alleged homicide so that this fact can or may be considered by the jury in reaching its verdict, the error, if any, committed by the lower court in considering the testimony called into question along with other testimony, under the strict rule, possibly should not have been admitted, was a ruling in behalf of the defendant and he is not in a position to complain.

The credibility of a witness can be called into question by showing that the witness has been convicted of crime, or that his general reputation for truth and veracity is bad, or the witness may be impeached by showing prior contradictory statements as to material testimony, and the law grants a trial court broad discretion in cross examination on questions affecting motive, interest or animus. See Nelso v. State, 99 Fla. 1037, 128 So. 1; Herndon v. State, 73 Fla. 451, 74 So. 511; Tully v. State, 69 Fla. 662, 68 So.

934; Wallace v. State, 41 Fla. 547, 26 So. 713; Mercer v. State, 40 Fla. 216, 24 So. 154.

Counsel for plaintiff in error, during the progress of the trial, offered into evidence a chair taken from the home of the deceased and it was contended in the lower court that the deceased was making an attack with this chair on the defendant at the time he fired the fatal shot. A number of questions about the chair were propounded to the witness by counsel for plaintiff in error and an objection thereto sustained by the trial court and assigned as error here. We find no error on these adverse rulings, because the jury had the chair before it and could make or reach the conclusions about the chair and of its value as a deadly weapon, based upon their judgment and experience as jurors and the conclusions of the witnesses to the tragedy were self serving and improper and the trial court ruled correctly in sustaining the objections thereto.

Questions four and five assigned as error the ruling of the trial court in overruling and denying the motion of counsel for plaintiff in error at the conclusion of the taking of the testimony for a view of the premises. It is contended that the lower court abused its discretion in denying the motion because of the sharp dispute or conflict in the testimony. It was the theory of counsel for plaintiff in error that if the jury could go to the scene of the homicide and observe the location or places where the different witnesses testified they were located at the time the homicide occurred and had an opportunity to see and observe the fight or portion thereof as testified to by the witnesses, such a view of the *locus in quo* would render assistance to the jury in determining the truth, or lack of truth of each group of witnesses, and by so doing would be in better position to decide the conflicts and disputes in the testimony, and that

reversible error occurred when the trial court refused their said motion.

This Court has held for many years that. a view of the premises where the crime was committed on the part óf a jury is made or addressed to the discretion of the trial court and will not be interfered with unless an abuse of discretion is made to appear. See Stanley v. Powers, 125 Fla. 322, 169 So. 861; Gaines v. State, 97 Fla. 908, 122 So. 525; Haynes v. State, 71 Fla. 585, 72 So. 180; Crawford v. State, 70 Fla. 323, 70 So. 374.

The record shows that when the motion was made by counsel to view the premises, the court gave certain reasons for the order denying the same, viz.:

"THE COURT: The motion is denied, for the following reasons: It does not appear that the premises are in the same condition that they were at the time of the alleged homicide. It does not clearly appear what position the parties occupied in reference to the testimony which the motion is made to clarify; that is to say, the testimony is not definite or certain as to the location of the witness at the time he purports to have seen what he testified about and the position of the accused on the outside. That the matter involves distance testimony of only a witness or two, and any view of the premises on that basis would tend to overemphasize the importance of the testimony of this witness. The alleged homicide is shown to have occurred, by the great weight of the evidence, in the night time, and a view might tend to confuse rather than clarify the evidence.

"The court feels, that for those reasons, the motion should be denied."

There is a presumption in this Court of the correctness of the ruling of the lower court and the burden of showing error is on the person asserting it. We are unable to find

error in this assignment. See Britt v. State, 88 Fla. 482, 102 So. 761; State v. Merritt, 86 Fla. 164, 99 So. 230; Hoodless v. Jernigan, 51 Fla. 211, 41 So. 194; Clements v. State, 51 Fla. 6, 40 So. 432; Stover v. Stovall, 103 Fla. 284, 137 So. 249.

This Court having fully considered the transcript of the record, the briefs of counsel for the respective parties, and citations of authorities having been examined appearing therein and having heard oral argument at the bar of this Court and now being advised as to its judgment, and it appearing that there is no error of law or procedure in and about the entry of the judgment appealed from, it is therefore considered, ordered and adjudged that the judgment appealed from be, and the same is, hereby affirmed.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur.

BUFORD, J., concurs in opinion and judgment.

Justices TERRELL and THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.