RUFFIE LUNDON, Plaintiff in Error, v. STATE,
Defendant in Error.

199 So. 755
En Banc
Opinion Filed January 17, 1941
Hearing Denied February 3, 1941

*Scruggs & Johnson* and *H. H. McDonald,* for Plaintiff in Error;

*George Couper Gibbs,* Attorney General, and *William Fisher, Jr.,* Assistant Attorney General, for Defendant in Error.

CHAPMAN, J.—On January 9, 1939, Ruffie Lundon was by a grand jury of Alachua County, Florida, indicted for the crime of murder in the first degree in the unlawful killing of James Robinson on the 29th day of November, 1938. He was duly arraigned and on the 10th day of January, 1939, entered a plea of not guilty, and shortly thereafter was placed on trial and by a jury convicted of murder in the first degree, without recommendation to mercy. A motion for a new trial was made and denied and the defendant immediately thereafter was sentenced to death by electrocution. From said judgment of conviction an appeal has been perfected to this Court.

The plaintiff in error by his brief poses seven questions to be decided by this Court. While these questions, or either thereof, as presented, are not abandoned by counsel, when the cause was heard on oral argument before the Court much of the argument was confined to the questions of the sufficiency of the evidence to sustain the verdict and to the error of the Court's ruling on the admission and rejection of testimony.

The testimony shows that the defendant and the deceased, James Robinson, and his wife, Vernon Robinson, were at the home of Robert Wincher, who lived in the same section of the city of Gainesville as the deceased. There is a dispute in the testimony as to whether or not the deceased and wife rode from their home with the defendant in the latter's car to the home of Wincher. The five persons were around the Wincher home when Vernon Robinson, wife of the deceased, James Robinson, went from the living room of the Wincher home to the kitchen on the pretext of getting a drink of water, and was followed by the defendant. What occurred in the kitchen between Vernon Robinson and the deceased in the Wincher kitchen is in conflict. Vernon Robinson and the defendant when on the stand as witnesses gave contradictory versions, but friction arose between deceased and the defendant over what occurred when the defendant and the wife of the deceased were in the kitchen. The parties here are colored people.

Vernon Robinson and the deceased, after a separation, had resumed cohabitation as husband and wife approximately thirty days prior to the death of James Robinson. Vernon Robinson visited the wife of the defendant and the latter made an effort to "date" Vernon Robinson during the time of her separation from her husband. After the "occurrence" in the kitchen and an exchange of words between the defendant and the deceased, the defendant left

the Wincher home, but a few minutes thereafter returned with a single barrel shot gun, when Robert Wincher undertook to disarm him, and Wincher had a pistol. During the tussle between the deceased and Wincher over the shot gun, Wincher's pistol was discharged and his wife sustained thereby a wound in the foot.

Medical aid was necessary and an effort was made to take Nettie Wincher to a physician. James Robinson and Vernon left the Wincher home and were walking down the street in the direction of their home, as is stated, for the purpose of getting their car with which to take Nettie Wincher to a physician, when the defendant appeared driving a Model A Ford car; he stopped it suddenly and approached the Robinsons with a pistol, when James Robinson ran from the scene and the defendant fired at him and the ball penetrated his body from the rear above one of his hips, and Robinson fell to the ground and later it was discovered that he was dead. The defendant returned to Vernon Robinson and struck her about the head with his pistol.

Vernon Robinson testified that when she and her husband were riding in the defendant's car from her home to the Wincher home, she observed a shot gun and a pistol in Ruffie Lundon's car. This statement is strongly corroborated by the fact that after the dispute arose in the Wincher home, the defendant left and in about five minutes returned with a shot gun, and at the time his car was near the Wincher home. The pistol was offered in evidence and the shells were removed therefrom some time after the shooting and one empty shell was found in the pistol. The defendant had been hunting that afternoon and had the shot gun and the pistol on the hunt.

There is no reasonable explanation appearing in the testimony for the defendant to go to the Wincher home or the Robinson home after the afternoon's hunt, around 8:00

or 9:00 o'clock, armed with a shot gun and a pistol. There is no creditable reason advanced for the defendant's attitude toward the deceased's wife in the Wincher home. The testimony reveals no quarrels or disputes between the parties until the defendant followed the wife of the deceased to the kitchen in the Wincher home, except when the deceased and the defendant sometime during the evening had an exchange of words about the father of the deceased at one time being in the employ of the defendant.

It is settled law that when the record discloses sufficient testimony from which all the essential elements of a crime may legally have been found and there is nothing in the record to show that the jury was influened by considerations other than the testimony, then the conclusions or findings of the jury on the conflicts or disputes in the testimony should by an appellate court be sustained. See Sanchez v. State, 133 Fla. 160, 182 So. 645; Anderson v. State, 133 Fla. 63, 182 So. 648; Haddock v. State, 141 Fla. 132, 192 So. 802; Seay v. State, 139 Fla. 433, 190 So. 702; Taylor v. State 139 Fla. 542, 190 So. 691; Beck v. State, 142 Fla. 524, 195 So. 143.

It is next contended that the judgment appealed from should be set aside and a new trial awarded because Vernon Robinson, Robert Wincher and Nettie Wincher were each intoxicated shortly prior to the fatal encounter and for this reason the jury was not justified in their consideration of the testimony of these alleged intoxicated witnesses when deliberating upon their verdict. When the defendant was on the stand he gave testimony to the effect that the defendant, the deceased and wife, Vernon Robinson, and Robert Wincher and wife, Nettie Wincher, had consumed several pints of whisky and were so intoxicated that their testimony could not be considered or relied upon by a jury. The witness Clark corroborated this statement of the defendant,

but some of the witnesses testified that they were each sober at the time and had not consumed or drunk whiskey.

The record discloses that while the State was presenting its case in chief and while the witness Vernon Robinson was on the stand and being cross examined by counsel for the defendant, the jury was excused and counsel for the defendant made to the court the proffer viz.:

"Mr. Scruggs: Comes now the defendant, and proffers to prove by this witness as to whether or not from the time that she met the defendant, Ruffie Lundon, on the night of the alleged homicide, she drank any whiskey up until the time that she was visited by a physician on the same night, but after the homicide, who treated the witness for her wounds; and which physician is prepared to testify as to the condition of the witness in regard to her intoxication and her ability at that time to know and understand the events which the witness is now seeking to testify about. And counsel now states to the Court that counsel has the testimony of three witnesses, one of which is the physician which treated the witness on the same night of the alleged homicide, and all of three witnesses will testify that the witness had been drinking to such an extent that she could not faithfully and truly remember, relate and detail the events that led up to the homicide, and that counsel is now seeking to lay the foundation for that testimony from this witness by the discovery of whether or not this witness received the intoxicating liquor which she had in her before or just after the homicide, which left this witness in the condition that the other witnesses will testify about. And we proffer to prove each and every of these facts, first by the foundation questions propounded to this witness, and then by the direct testimony of witnesses for the defendant."

"The Court: Haven't you already inquired of this

witness as to her drinking up until the time of the homicide?"

"Witness: I didn't take a drink."

Dr. Merchant, subsequent to the proffer, appeared as a witness in behalf of the State and it was shown that he dressed the pistol wound of Nettie Wincher in her home some time after James Robinson was shot and during the time had an opportunity to observe the witnesses Vernon Robinson and Nettie Wincher as to intoxication. Counsel for defendant declined to interrogate Dr. Merchant on cross examination as to the intoxicated condition of these witnesses at the time of his professional call. The two women occupied the same bedroom after Dr. Merchant left. There is no reason shown by the record for not making inquiry on cross examination of Dr. Merchant as to the intoxicated condition. He likewise failed or omitted to produce Dr. Merchant at a later hour of the trial or either of the witnesses referred to in the proffer, but elected to rely on the previous proffer made.

We do not know what testimony on this point would have been given by Dr. Merchant had counsel for the defendant gone into the question on cross examination. The proffer fails to disclose the names of witnesses on the point of intoxication other than Dr. Merchant. It is apparent on a review of the case in this Court that the interest of the defendant would be advanced by relying upon and assigning as error the adverse ruling of the lower court on the admission of the proffer rather than produce the witnesses in open court and place the testimony as to the intoxication of the State's witness in the record. See Wharton's Criminal Evidence, Vol. 3 (11th Ed.), page 2314, par. 1412. The only physician attending the witness Nettie Wincher, shortly after the shooting was Dr. Merchant and the defendant and the witness Clark each testified that the witnesses

consumed considerable whiskey. We think it was the duty of counsel to have examined Dr. Merchant on this point when he was on the witness stand and should not be permitted to get the benefit of his failure so to do by standing on the proffer in this Court. We think this assignment is without merit.

The several questions posed in the brief of counsel for plaintiff in error have each been carefully considered. The record has been studied and the authorities cited examined. We fail to find error in the record.

The judgment appealed from is hereby affirmed.

WHITFIELD, TERRELL, BUFORD and ADAMS, J. J., concur.

THOMAS, J., agrees to conclusion.

BROWN, C. J., dissents.