74 So.2d 797 (1954)
Jessie Lee WILLIAMS, Appellant,
v.
The STATE of Florida, Appellee.
Supreme Court of Florida. Division B.
September 28, 1954.
*799 Will O. Murrell, Wm. O. Murrell, Jr., Boone & Swanson, Jacksonville, for appellant.
Richard W. Ervin, Atty. Gen., Moie J.L. Tendrich, Sp. Asst. Atty. Gen., for appellee.
HOBSON, Justice.
Appellant, Jessie Lee Williams, was indicted for murder in the first degree. He pleaded not guilty, and his trial resulted in a jury verdict of guilty of murder in the second degree. His motion for new trial was denied, judgment on the verdict was duly entered, and he was sentenced to imprisonment for the remainder of his natural life.
From the testimony of several eye-witnesses, and from the appellant's own testimony, it appears without question that in the evening of May 24, 1953, on a public street in Jacksonville, appellant engaged in an argument with the deceased, Artice Clark, over the giving of information to the police about the sale of moonshine whisky. During this argument the appellant stabbed Clark in the chest with a knife, producing a wound from which he died several days thereafter.
Appellant contends that two errors were committed during the course of his trial which warrant reversal.
The first of these alleged errors occurred when defense counsel was cross-examining one Clarence McNeal, an eye-witness called by the State. On direct examination McNeal had testified that before the fatal encounter, he had overheard a conversation between appellant Williams and the latter's grandmother during which Williams had said "I am going to have satisfaction out of Artice." Attempting to lay a foundation for the impeachment of this witness, defense counsel asked him if he had so testified at the coroner's inquest, whereupon McNeal replied that he had not, but that he had then testified that "Jessie Lee said he was going to kill Artice." Defense counsel then sought to prove that McNeal had not so testified at the coroner's inquest, and that the record of the proceedings there contained no such statement. In order to accomplish this objective, defense counsel requested leave to read to the witness McNeal, on the stand, the entire record of the proceedings at the coroner's inquest. The trial judge denied this request, expressing the opinion that the orderly way to prove that the record made at the coroner's inquest did not contain this statement was through the court reporter who had taken down the proceedings, and was then available in the courtroom to testify. Defense counsel, however, chose to stand upon his original request, and made no effort to call the court reporter as a witness.
We are of the opinion that this ruling was well within the discretion of the trial judge to control the process of proof and the orderly conduct of the trial. On more fundamental grounds, however, if the ruling could possibly be considered error, it would not warrant reversal, because it could not have affected the outcome of the case. See Cornelius v. State, Fla., 49 So.2d 332. Either statement which the witness McNeal claimed to have overheard could have gone only to the issue of premeditation, and on this issue the jury obviously found in appellant's favor, or it would not have brought in the verdict rendered.
The second alleged error occurred while the State's Attorney was cross-examining the appellant while he was testifying as a witness in his own behalf. On direct examination, appellant had testified in substance that the deceased threatened him and attempted to stab him with a knife, the point of which had cut his shirt, and while retreating and in fear for his life, appellant had stabbed the deceased in self-defense. If the jury had believed the appellant's testimony in its entirety, and had not believed the testimony of witnesses for the State who, with varying opportunities to observe the quarrel, testified that the deceased had no knife or other weapon in his hand, a verdict of not guilty might lawfully have been returned under the circumstances. In this respect the case stands *800 differently from Cornelius v. State, supra, where by defendant-appellant's own admission he saw no weapon of any kind in the hand or in the possession of the deceased before shooting him to death, and on the strength of defendant-appellant's own testimony no reasonable man could have believed that defendant-appellant feared for his life. In the instant case, presenting, as it did, a sharp clash of testimony, the issue of credibility became paramount. Upon cross-examination, therefore, the State attempted to impeach appellant's credibility by reading, in the presence of the jury, an extrajudicial statement purportedly made by appellant before certain assistant state's attorneys and police officers, in response to questions propounded by one of them, and asking appellant if he had made such a statement. This statement included the words "I stabbed him because he was forcing me to tell a lie, that I sold moonshine." Defense counsel requested leave to examine a copy of this statement, but the request was denied. The State later withdrew the questions based upon the statement, and the court addressed the jury as follows:
"Gentlemen, the State has asked leave to withdraw those questions that they asked the defendant here on the stand, reading from that paper, and those questions, on motion of the State, are withdrawn from your consideration, and that matter will not be pursued any more, as I understand it."
The extrajudicial statement attributed to appellant was completely inconsistent with any theory of self-defense, and, standing alone, went to the merits of his case. There can be no doubt as to its highly prejudicial character and although it did not in itself constitute a complete confession, it came within that class of declarations against interest governed by the rules applicable to confessions. Louette v. State, 152 Fla. 495, 12 So.2d 168. Upon authentication and a suitable showing that the statement had been made voluntarily, it could properly have been admitted into evidence, Story v. State, Fla., 53 So.2d 920; Browne v. State, 92 Fla. 699, 109 So. 811, and in such case it would have been available to appellant's counsel in its entirety, so that if the damaging admissions had been qualified in any way by the appellant in the balance of the statement, and brought into harmony with his testimony at the trial, this fact could have been brought out upon redirect examination. The whole statement should also have been made available to defense counsel for use in cross-examination if it had been introduced through a witness for the State. See Louette v. State, supra. If the paper or papers containing the statement had been used to refresh the recollection of appellant while a witness, they should have been shown to his counsel on demand, even though not introduced in evidence, U.S. v. Socony-Vacuum Oil Co., 310 U.S. 150, 233, 60 S.Ct. 811, 84 L.Ed. 1129; Morris v. U.S., 5 Cir., 149 F. 123; Lennon v. U.S., 8 Cir., 20 F.2d 490; 58 Am.Jur., Witnesses, Sec. 602 and cases cited; Wigmore on Evidence, 2d ed., Sec. 762. We can see no reason why the document here under consideration should fall into a different category and not be produced upon demand for inspection by defense counsel, with due regard for its highly prejudicial character and the circumspection with which confessions of any kind must be approached. If this were not the law, the safeguards which have been built around the process of introducing extrajudicial confessions in evidence could be circumvented by their purported use solely for impeachment.
We are of the opinion that this case must be reversed and remanded for a new trial, for the reasons we have outlined above. In reaching this result we are not unmindful of the fact that the State withdrew its questions based upon the document from which its counsel had read, nor of the rule of Lambert v. Higgins, Fla., 63 So.2d 631, and cases therein cited, that a charge by the trial court directing the jury to disregard evidence corrects irregularities which might have occurred in connection therewith. We are not satisfied, however, that the instruction given by the trial court herein and reproduced above was sufficiently direct and positive to make the rule *801 applicable. It was not nearly so specific as that before us in the Lambert case (which was a civil suit for damages) nor as it should be under similar circumstances in any case, civil or criminal, to eradicate from the minds of the jury of laymen not only the offending evidence itself but the imputations and inferences which might be drawn therefrom. In this case, considering the seriousness of the charge and the effect that reading from the document in question might have had upon the jury, we have no hesitation in concluding that the instruction given was inadequate.
Reversed and remanded.
ROBERTS, C.J., and THOMAS and DREW, JJ., concur.