221 So.2d 155 (1969)
Grover Cleveland STEWART, Appellant,
v.
The STATE of Florida, Appellee.
No. 68-391.
District Court of Appeal of Florida. Third District.
April 8, 1969.
Robert L. Koeppel, Public Defender, and Maurice Jay Kutner, Asst. Public Defender, for appellant.
Earl Faircloth, Atty. Gen., and Harold Mendelow, Asst. Atty. Gen., for appellee.
Before BARKDULL, HENDRY and SWANN, JJ.
HENDRY, Judge.
The defendant, Grover Cleveland Stewart, was charged by information with second degree murder. The defendant entered a plea of not guilty and was tried before a jury which found him guilty as charged. He was sentenced to a term of twenty years in the State Penitentiary. This appeal is from that conviction and sentence.
The facts as related by the defendant from the witness stand tend to show that the decedent, son-in-law of defendant, had severely beaten the defendant about one year prior to the offense. The defendant stated that just prior to the shooting he had learned of a threat his son-in-law had made against defendant's daughter, the *156 decedent's wife. He went to the motel room of his son-in-law to discuss the matter and took a pistol with him because he did not want to get beaten up again. Decedent came out of his motel room and escorted defendant back to the room where there was a discussion of the alleged threat to the daughter. The defendant started to leave, but decedent punched him in the mouth and tried to grab the gun in defendant's hand, at which time the pistol was discharged and decedent fell back in the bathroom. Defendant contended that when decedent grabbed for the gun, this pulled his arm down so that the gun fired without ever having been cocked.
The witnesses for the state gave testimony that was in conflict with that offered by the defendant and his witnesses.
The state's witness, Marilyn Finley, was employed at the motel at the time of the shooting. She testified that she saw two men walk into room No. thirty-six. The one she identified as the defendant was carrying a rifle or shot-gun. She later saw the defendant leave the room with the gun wrapped in a blanket.
Ora Lee Wade, another state witness, was also employed at the motel at the time in question. She testified that about 10:00 A.M., she saw a man with a gun standing outside of the decedent's car who ordered the man in the car to get out. The man with the gun had it pointed at the man in the car. She said she saw both men enter room No. 36 and heard a shot from inside the room.
Sgt. Ford, of the Dade County Sheriff's Office, testified that when he saw the defendant at about noon on the day of the shooting there appeared to be no marks or injuries on the person of the defendant. He went to defendant's home two days later and saw a shotgun in a disassembled state.
Deputy Sheriff Borders and Sgt. Beck testified that when they went to the defendant's home on the morning of the shooting, the defendant told them he had shot his son-in-law with a pistol.
There were four state witnesses who testified that early in January the defendant had threatened to kill the deceased. The defendant's son, a defense witness, testified that when his father came home following the shooting, he, the father, had a bloody mouth. Another witness for the defendant testified that he saw bruises and scratches on the defendant when he visited him in jail.
Appellant's first contention is that the trial court erred in denying the motion for mistrial when the state asked the defendant's young son on cross-examination, "Let me ask you this, you were in the Dade County Juvenile Home not long ago, weren't you?" Counsel for defendant made a timely objection to the question and the court sustained the objection. The court also admonished the jury as follows:
"Ladies and gentlemen of the jury, I have stricken the last question asked by the prosecuting attorney. It was clearly improper, and you are not to consider it in any way, shape or form, or draw any inference whatsoever from the fact that the question was asked.
"It was improper and the court has stricken it.
"Now I am going to ask each one of you individually, can you promise me you can strike this or any inference from the question from your mind and not consider that question in any way, shape or form in arriving at your verdict in this case? Can all of you? Can all of you say yes? You will be in violation of your oaths as jurors if you would let this affect your verdict, that question being asked, even though there was no answer given. It is highly irrelevant and immaterial, and is stricken by the court."
The jurors gave an affirmative response. Whereupon the motion for mistrial was denied.
*157 Appellant argues that the question was so objectionable and prejudicial that its harmful effect on his trial could not be cured by an instruction from the court. The state recognizes that the question was improper but offers two grounds, in order to contend that the question did not prejudice the appellant's case.
The first of these grounds contends that the prejudicial statement did not affect the fundamental fairness of the appellant's trial because any imputation that the witness was in the juvenile detention home could not raise doubt as to the witness' character or credibility. Such a position is out of touch with reality, as the inference of incarceration in a juvenile detention home certainly casts doubt on the character and believability of a person so confined. This negative inference would exist in the minds of a lay jury regardless of the fact that said person may also be a "dependent child", § 39.02 Fla. Stat. F.S.A., which includes children who are destitute, homeless, neglected, etc., § 39.01 Fla. Stat. F.S.A. Thus, we cannot accept this argument in order to uphold the court's refusal to grant a mistrial.
However, the state also contends that any harmful effect created by the statement was totally cured by the court's instruction. We agree with this position on this point and hold that it was not error for the court to deny the motion for mistrial. In Williams v. State, Fla. 1954, 74 So.2d 797, the court set forth the test to determine whether an instruction to the jury would cure any error in relation to the evidence or testimony before the jury. Such instruction must:
"* * * eradicate from the minds of the jury of laymen not only the offending evidence itself but the imputations and inferences which might be drawn therefrom."
In our opinion, the court's curative instruction, supra, met the test of the Williams case.
The appellant also questions the sufficiency of the evidence offered to establish guilt. He contends that the court should have granted a directed verdict of not guilty at the close of all the evidence or granted his motion for a new trial. He argues that since he took the stand and was the sole eye witness to the event and his testimony stated facts which, if true, would have justified the act, and no other evidence or testimony was legally sufficient to contradict him, it was error for the court to deny his motion for directed verdict and new trial. We have carefully considered these contentions in the light of the record and find them to be without merit.
Certainly, there was conflict in the testimony, but the jury, acting within its province, resolved such conflicts against the defendant and his witnesses. Even more fundamental is the often applied rule that where the record contains ample evidence to sustain and justify the trial court's verdict, an appellate court cannot substitute its judgment for that of the jury as to the credibility of witnesses and weight of the evidence. Jones v. State, 147 Fla. 677, 3 So.2d 388 (upholding jury's conviction of arson); Dixon v. State, 143 Fla. 277, 196 So. 604 (upholding jury's conviction of second degree murder); Taylor v. State, 139 Fla. 542, 190 So. 691, 124 A.L.R. 835 (upholding jury's conviction of second degree murder).
Affirmed.