PEARSON, Judge.
Appellant was found guilty by a jury of assault with intent to commit murder. The court entered an adjudication of guilt upon the verdict and sentenced appellant to fifteen years imprisonment. On appeal, two points are presented alleging reversible error.
The first point concerns the disclosure by an eyewitness to the shooting that he had, as a minor, been found guilty of a juvenile offense. Such disclosure was made only after the persistent repeating by the State of the question, “Have you ever been convicted of a crime?” At first, the witness answered, “No sir” to which the State reasserted, “Never?” Appellant objected and a side bar conference followed in which the State told the court that it was prepared to show 'by the witness’s own statement that the witness had been convicted of a crime. The court sustained the appellant’s objection. The State, upon resuming the questioning of the witness, restated the question, “So that I understand what you are saying,” referring to the witness’s statement that he had not previously been convicted of a crime. The court overruled appellant’s objection to the question and the witness then asked for the question “one more time.” Upon the State’s repeating the question, the witness responded that he had been convicted, “as a minor.” Appellant moved to strike and for a mistrial, which motions the court respectively overruled and denied.
Both parties cite the case of Stewart v. State, Fla.App.1969, 221 So.2d 155. In that case, the State asked a witness, “. . . you were in the Dade County Juvenile Home not long ago weren’t you?” The trial judge struck the question and admonished the jury to disregard it, but refused to grant a mistrial. That court held that the harmful effect created was cured by the court’s instruction. From a reading of the transcript here, we think that the State must be presumed to have known of the witness’s juvenile record. The persistent repetition of the question by the State, of itself, emphasized the State’s position that the witness was unworthy of belief because of his prior trouble as a minor. As to the relevancy of a conviction that is remote, see Braswell v. State, Fla.App.1975, 306 So.2d 609. The court should have struck the question and answer from the record and should have instructed the jury to disregard such testimony.
The second point on appeal concerns the State’s failure to notify the defendant of a deposition of this same witness which was taken by the State some four days prior to trial. The error urged is that the State failed to notify the appellant that the witness had been subpoenaed and was to be deposed and further that the appellant had not been provided with a copy of the *126 deposition.[1] The witness deposed was one of two eyewitnesses to the shooting. Anything he said upon being deposed was of vital importance to the defense. It appears that at about 11:00 a. m. on the third day of the trial the State had in its possession copies of the deposition in question. Defendant’s counsel was not told that copies of such deposition were available. The direct examination of the witness by the defense was completed before appellant learned not only of the State’s possession of copies of the deposition, but also of the very fact that the witness had been deposed.
The State’s position is that violation of the rule (CrPR 3.220) makes no difference here inasmuch as there could be no surprise to the defendant. It is claimed that he knew full well that the witness had a propensity for lying and that on three previous occasions, the witness’s testimony was contradictory.
 In considering this argument, we first note that in not abiding by the rules as to discovery, the State was not acting in the best interests of justice within the framework of its position as an arm of the court. Second, once the clear showing was made of a departure from the rules, the State was unable to present this court with an adequate showing of the absence of surprise to the appellant. Accepting the fact that the witness had changed his testimony on prior occasions, we are, nevertheless, mindful that he was one of only two eyewitnesses to the shooting. The State’s use of his latest deposition coupled with the State’s action in withholding the deposition until the completion of direct examination by the defense amounted to an unfair advantage. Deeb v. State, 131 Fla. 362, 179 So. 894 (1937). Further, it is evident from the record that the trial judge’s inquiry into the discovery rule violation by the State, which was called for here, did not meet the proper standards for such inquiry. See Ramirez v. State, Fla.App. 1970, 241 So.2d 744.
In the final analysis, we are unwilling to speculate as to the possibilities of there being no, or little, prejudice to the defense’s case, where we are confronted with numerous possibilities of real and significant prejudice. See Richardson v. State, Fla.1971, 246 So.2d 771. Upon these facts, we have little choice but to find that the trial court should have declared a mistrial.
Reversed and remanded for a new trial.

. Or PR 3.220(j)
“(j) Sanctions.
“(1) If, at any time during the course of the proceedings, it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or with an order issued pursuant to an applicable discovery rule, the court may order such party to comply with the discovery or inspection of materials not previously disclosed or produced, grant a continuance, grant a mistrial, prohibit the party from calling a witness not disclosed or introducing in evidence the material not disclosed, or enter such other order as it deems just under the circumstances.”