583 So.2d 642 (1991)
William D. CHRISTOPHER, Appellant,
v.
STATE of Florida, Appellee.
No. 74451.
Supreme Court of Florida.
May 30, 1991.
Rehearing Denied August 23, 1991.
*643 James Marion Moorman, Public Defender and Steven L. Bolotin, Asst. Public Defender, Tenth Judicial Circuit, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., and Candance M. Sunderland, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
William Christopher appeals his convictions and sentence of death for the first-degree murders of Bertha Skillin and George Ahern. This Court previously affirmed Christopher's convictions and sentence for these murders in Christopher v. State, 407 So.2d 198 (Fla. 1981), cert. denied, 456 U.S. 910, 102 S.Ct. 1761, 72 L.Ed.2d 169 (1982). However, the Eleventh Circuit Court of Appeals granted Christopher's petition for habeas corpus, finding that his confession was obtained in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), because the police ignored Christopher's attempts to cut off questioning. Christopher v. Florida, 824 F.2d 836 (11th Cir.1987), cert. denied, 484 U.S. 1077, 108 S.Ct. 1057, 98 L.Ed.2d 1019 (1988). Christopher *644 was again tried, resulting in the present convictions and sentence. We have jurisdiction of this appeal under article V, section 3(b)(1) of the Florida Constitution.
Bertha Skillin and her adopted fourteen-year-old daughter, Norma Sands, lived with Skillin's boyfriend, George Ahern, in Naples. Christopher was staying with the three of them in August of 1977. Christopher was Norma's biological father. At trial Norma testified that she and Christopher developed a sexual relationship during that time.[1] She also testified that Ahern made sexual advances toward her and that Christopher was aware of this. One of Norma's friends testified that a week before the murders Christopher stated that he would kill Ahern.
On August 31, 1977, Ahern, accompanied by another man, withdrew $300 from his bank. Later that day Christopher checked Norma out of school, and they left town together as they had planned. Christopher had about $300 with him when he picked her up. He told Norma they could stop by the apartment and get her television and stereo if Skillin's and Ahern's cars were not there, but the cars were there so they did not stop.
Norma testified that as they drove north out of Florida Christopher told her that he and Ahern had gotten into a fight. He said that he punched Ahern in the nose and that he "started bleeding all over the place." Norma did not believe Christopher, so he told her to look in the backseat. She pulled out his tennis shoes, and they had blood on them.
Skillin's and Ahern's bodies were discovered on September 13. The medical examiner testified that Ahern died from a gunshot wound to the head. Ahern also had a gunshot wound in his right arm and a bruise on his chest consistent with his being punched with a fist. Skillin also died from a gunshot wound to the head. The gun that Christopher possessed when arrested was capable of firing the bullets that killed Skillin and Ahern. However, the police could not positively identify the gun as the murder weapon.
Norma's biological mother, Patricia Stock, repeatedly tried to call Bertha Skillin in early September, but no one answered the phone. She testified that when she talked to Christopher he told her that Ahern and Skillin had gone to the Keys for a few days. She also testified that when Norma was visiting her the summer before the murders, Norma had referred to Ahern's sexual advances toward her, and Christopher responded, "I'll kill that S.O.B."
Christopher was arrested in Memphis on September 22. He was interrogated at the Memphis police station where he gave the unconstitutionally obtained confession that was not admitted at this trial. On September 24 he was taken to the Memphis airport to fly back to Florida. While they waited for their flight, he asked Detective Young what would happen to Norma. Detective Young answered that she would probably be returned to her biological mother, Patricia Stock. Detective Young testified that the defendant then stated, "If you hadn't of caught me when you did, I would have killed one other person." In light of other evidence in the case, it is clear that Christopher was referring to Griff Stock, Patricia Stock's then-boyfriend, who had also made sexual advances toward Norma.
The jury returned a verdict of guilty. At the penalty phase of the trial, Christopher's counsel read to the jury written statements from Christopher's parents, stepmother, and aunt. Against his counsel's advice, Christopher chose not to have anyone testify. The jury recommended the death penalty by a nine-to-three vote. The judge imposed the death penalty, but he did not issue his written findings until two weeks after sentencing Christopher. In his written order he found two aggravating circumstances: 1) Christopher was previously convicted of violent felonies, and 2) the murders were especially heinous, atrocious, or cruel. He found no mitigation.
*645 Christopher's first challenge to his conviction is that the trial court should not have allowed Detective Young to testify as to Christopher's statement at the Memphis airport. He claims that statement was inadmissible because it is the fruit of the unconstitutionally obtained confession under State v. Madruga-Jiminez, 485 So.2d 462 (Fla. 3d DCA), review denied, 492 So.2d 1335 (Fla. 1986). He further claims the inadmissible confession was coerced. The state in turn argues that the resolution of this issue is controlled by Martin v. Wainwright, 770 F.2d 918 (11th Cir.1985), modified, 781 F.2d 185 (11th Cir.), cert. denied, 479 U.S. 909, 107 S.Ct. 307, 93 L.Ed.2d 281 (1986).
We hold that the statement was admissible. Miranda was not violated by admission of this statement because the statement was not made during an interrogation. Christopher instead volunteered the statement in a conversation about Norma that he initiated in the middle of an airport waiting area, two days after he was questioned about the murders. The United States Supreme Court in Miranda stated that "[v]olunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." Miranda, 384 U.S. at 478, 86 S.Ct. at 1630. The Eleventh Circuit has also stated that "[v]oluntary incriminating statements, however, not made in response to an officer's questioning are freely admissible." United States v. Suggs, 755 F.2d 1538, 1541 (11th Cir.1985). See also Endress v. State, 462 So.2d 872 (Fla. 2d DCA 1985); Spikes v. State, 405 So.2d 430 (Fla. 3d DCA 1981). Detective Young's comments to Christopher here were clearly not a type of interrogation since his answer to the question about Norma was not reasonably likely to elicit an incriminating response from Christopher. See Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). In any event, we note that the circumstances of this volunteered statement were such as to remove any taint remaining from the prior inadmissible confession. See Oregon v. Elstad, 470 U.S. 298, 313, 105 S.Ct. 1285, 1295, 84 L.Ed.2d 222 (1985).[2]
Christopher next claims that it was error for the trial court to exclude testimony that Christopher told Norma that Ahern had killed Skillin and then himself. Christopher claims that the testimony is admissible because the state opened the door by questioning Norma about another conversation in which Christopher told her he had been in a fight with Ahern. He argues that the rule of completeness requires the admission of this testimony in order for the jury accurately to perceive the whole content of what transpired between Norma and Christopher.
The state correctly points out that Norma's testimony that Christopher told her that he and Ahern fought was admissible under section 90.803(18)(a), Florida Statutes (1987). That section allows admission of statements of an individual when they are offered against the individual as a party to the lawsuit. On the other hand, Christopher could not through Norma's testimony introduce his statements to Norma about the murder-suicide because the statute does not allow a party to introduce his own exculpatory hearsay statements. See Fagan v. State, 425 So.2d 214 (Fla. 4th DCA 1983) (defendant's self-serving hearsay statement inadmissible). Therefore, unless this testimony was admissible under the rule of completeness, the testimony was inadmissible.
The rule of completeness is codified in section 90.108, Florida Statutes (1987), which provides that when a "writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any *646 other part of any other writing or recorded statement that in fairness ought to be considered contemporaneously." The comment to this rule specifically states:
This section does not apply to conversations but is limited to writings and recorded statements because of the practical problem involved in determining the contents of a conversation and whether the remainder of it is on the same subject matter... . Therefore, remaining portions of conversations are best left to be developed on cross-examination or as a part of a party's own case.
6B Fla. Stat. Ann. 209 (1979) (Law Revision Council Note).
When the state offers in evidence a part of a confession or admission against interest, the defendant is entitled to bring out on cross-examination the entire confession or admission. Louette v. State, 152 Fla. 495, 12 So.2d 168 (1943). In Eberhardt v. State, 550 So.2d 102, 105 (Fla. 1st DCA 1989), review denied, 560 So.2d 234 (Fla. 1990), the rule was applied as follows:
Because portions of the defendant's conversation with the officer were admitted on direct examination, the rule of completeness generally allows admission of the balance of the conversation as well as other related conversations that in fairness are necessary for the jury to accurately perceive the whole context of what has transpired between the two. Ehrhardt, Florida Evidence, § 108.1 (2d Ed. 1984). Once the officer testified in the state's case-in-chief about one portion of Eberhardt's statements to him, the court erred in sustaining the state's hearsay objection for the reason that his statements he was "high" or intoxicated were self serving. Heathcoat v. State, 430 So.2d 945 (Fla. 2d DCA), aff'd, 442 So.2d 955 (Fla. 1983).
On the other hand, cross-examination is always subject to the requirement that it "must either relate to credibility or be germane to the matters brought out on direct examination." Steinhorst v. State, 412 So.2d 332, 337 (Fla. 1982).
The conversation in which Christopher told Norma that he had fought with Ahern occurred on the day they left Naples. The conversation in which Christopher told her that Ahern had killed himself and Skillin took place in Arkansas several days later. While the two conversations referred generally to the same events, the later conversation did nothing to explain the earlier conversation. The jury could not have been misled as to the content of the earlier conversation by the exclusion of the later conversation. Therefore, the court properly excluded Norma's testimony with respect to what Christopher told her in Arkansas.
We reject without discussion Christopher's argument that the trial court erred by allowing the state to impeach its own witness, Norma Sands, with portions of her testimony from Christopher's earlier trials and from her deposition.
Christopher's remaining claims challenge his death sentence. Because we find that his death sentence must be vacated due to an error in issuing the written sentencing order, we discuss only that claim. The trial judge did not make written findings on Christopher's death sentence until two weeks after he sentenced Christopher to death. Christopher's trial occurred after this Court's opinion in Grossman v. State, 525 So.2d 833 (Fla. 1988), cert. denied, 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989), became effective. In Grossman, this Court established the rule that "all written orders imposing a death sentence be prepared prior to the oral pronouncement of sentence for filing concurrent with the pronouncement." Grossman, 525 So.2d at 841. In Stewart v. State, 549 So.2d 171, 176 (Fla. 1989), cert. denied, ___ U.S. ___, 110 S.Ct. 3294, 111 L.Ed.2d 802 (1990), we stated that "[s]hould a trial court fail to provide timely written findings in a sentencing proceeding taking place after our decision in Grossman, we are compelled to remand for imposition of a life sentence."
Our holding in this respect is more than a mere technicality. The statute itself requires the imposition of a life sentence if the written findings are not made. § 921.141(3), Fla. Stat. (1989). We have consistently *647 emphasized the necessity that the weighing of aggravating and mitigating circumstances take place at sentencing. Patterson v. State, 513 So.2d 1257 (Fla. 1987); Muehleman v. State, 503 So.2d 310 (Fla.), cert. denied, 484 U.S. 882, 108 S.Ct. 39, 98 L.Ed.2d 170 (1987). The preparation of written findings after the fact runs the risk that the "sentence was not the result of a weighing process or the `reasoned judgment' of the sentencing process that the statute and due process mandate." Van Royal v. State, 497 So.2d 625, 630 (Fla. 1986) (Ehrlich, J., concurring).
We affirm the conviction of murder. We quash Christopher's death sentence and remand with directions that the trial court impose a sentence of life imprisonment without parole for twenty-five years for each of the murder convictions. These sentences may be imposed concurrently or consecutively. § 775.021(4), Fla. Stat. (1977).
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] Norma Sands Van Loton at first refused to testify at the trial. The trial judge held her in contempt. After four days in jail, she agreed to testify.
[2] Martin v. Wainwright, 770 F.2d 918 (11th Cir.1985), modified, 781 F.2d 185 (11th Cir.), cert. denied, 479 U.S. 909, 107 S.Ct. 307, 93 L.Ed.2d 281 (1986), while similar, is arguably distinguishable not only because it involved two statements obtained through interrogation, but also because Christopher unequivocally asserted his right to remain silent. See Martin, 770 F.2d at 927 n. 12, 929 n. 14; Christopher v. Florida, 824 F.2d 836, 842 (11th Cir.1987), cert. denied, 484 U.S. 1077, 108 S.Ct. 1057, 98 L.Ed.2d 1019 (1988). We hold that Christopher's statement here is admissible even if the initial confession were to be considered involuntary.