675 So.2d 976 (1996)
Willona PERRY, Appellant,
v.
STATE of Florida, Appellee.
No. 94-2994.
District Court of Appeal of Florida, Fourth District.
May 29, 1996.
Rehearing and Certification of Question Denied July 17, 1996.
*977 Carey Haughwout of Tierney & Haughwout, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee and James J. Carney, Assistant Attorney General, West Palm Beach, for appellee.
KLEIN, Judge.
Appellant was one of three teenage girls who took a cab home from the mall. As they were getting out without intending to pay, one of them shot and killed the cab driver. Appellant, who was tried separately, was convicted of first degree murder with a firearm, armed robbery with a firearm, and possession of a firearm by a minor. We reverse her convictions because the trial court unreasonably limited voir dire, and because of the exclusion of inculpatory statements against penal interest by one of the other girls reflecting that she was the shooter.
The day after the killing, appellant, who was seventeen, telephoned the police and gave a statement. In it she recounted that when the girls left the Palm Beach Mall, they got into a cab, with appellant in the front and the other two in the back. When they reached their destination, appellant turned to tell the driver they had no money, and one of the other girls, Stephanie Powell, shot him in the head. The girls then fled to the home of an acquaintance where Powell was crying *978 and saying she did not mean to shoot the victim.
The following evening appellant again called the police and gave a contradictory statement in which she said that she had the gun, was in the back seat behind the driver, and shot the driver.
Both of appellant's statements were admitted into evidence at trial. In her testimony at trial appellant explained that her first statement was truthful, but because people in the housing project where she and Powell lived were blaming her since she was the oldest, she had decided to falsely confess to help Powell, who was only thirteen.
Appellant's cousin, who was Powell's boyfriend, testified that shortly after the shooting he took the girls to his house where Powell was upset and crying that she had not meant to do it. Another witness who saw the girls soon after the shooting also heard Powell crying and saying that she did not mean to do it.
The senselessness of this killing by these youths generated tremendous publicity, and the court granted the defendant's motion requesting that the jurors, prior to the normal voir dire, be examined about the possible effect of the publicity on them. The court began voir dire by asking general questions about employment, address, prior involvement with courts or jury service, etc. Both the court and counsel then questioned jurors individually about the pretrial publicity. Of the fifty jurors initially summoned, more than twenty were excused because the publicity had prejudiced them. An additional group of about forty jurors was then questioned with similar results. After a day and a half, forty-five jurors who were untainted by the publicity were found.
Following this questioning, the court announced that it would limit the remainder of voir dire to ninety minutes a side, to which the defense objected. After the state finished with its questions, the defense renewed its objection to the time limitation. At that point the court asked the defense to try to finish in ninety minutes, but said that it would consider granting extra time if necessary.
During questioning by the defense, which included both individual questions about hobbies, interests, clubs, and some questions which were redundant of general questions asked jurors by the court, the court warned counsel to speed it up. The court thereafter informed defense counsel that they had then exceeded two hours and they would have ten more minutes. Defense counsel continued with group questions about whether jurors would hold it against appellant if she did not testify, after which the court terminated defendant's voir dire.
Defense counsel requested more time, pointing out to the court that six jurors had raised their hands when asked if they had a problem with the appellant not testifying, and other jurors had indicated that they had been victims of crime. Further, the defense had not been able to question fourteen of the jurors individually at all. The court did not allow additional time, but did ask the remaining jurors, as a group, if they knew any of the witnesses, had been victims of a crime, or if they understood that the state had the burden of proof and that the defendant did not have to testify or present evidence. A jury of twelve was then selected after the defense exercised seven peremptory challenges.
Appellant argues that the time limitation was an abuse of discretion. She claims that she would have exercised additional peremptory challenges, but was afraid to because it could have resulted in jurors being seated who had not been individually questioned by the defense.
The last sentence of Florida Rule of Criminal Procedure 3.300(b) provides that, "The right of the parties to conduct an examination of each juror orally shall be preserved." As our supreme court has explained:
The examination of a juror on his voir dire has a two fold purpose, namely, to ascertain whether a cause for challenge exists, and to ascertain whether it is wise and expedient to exercise the right of peremptory challenge given to parties by the law.
* * * * * *

*979 [F]ull knowledge of all material and relevant matters is essential to the fair and just exercise of the right to challenge either peremptorily or for cause.
Loftin v. Wilson, 67 So.2d 185, 192 (Fla.1953) (quoting Pearcy v. Michigan, Mut. Life Ins. Co., 111 Ind. 59, 12 N.E. 98, 99 (Ind.1887)).
Trial courts have considerable discretion in controlling the time allotted for voir dire, as well as the extent of counsel's questions. Williams v. State, 424 So.2d 148 (Fla. 5th DCA 1982). Unreasonable limitations on time or the number of questions, however, result in reversal. O'Hara v. State, 642 So.2d 592, 593 (Fla. 4th DCA 1994).
We find that the court did abuse its discretion in this case when it terminated voir dire before defense counsel had an opportunity to question all of the jurors individually. A number of factors have led us to this conclusion. First, this was a capital case, and thus involved twice the usual number of jurors. Second, it was the type of case which could generate unusual emotional reactions from jurors because of the senselessness of the killing and the ages of the participants. Third, the number of jurors (forty-five) from which the selection was being made was large.[1] Fourth, exercising more than the seven peremptory challenges the defense did use would have resulted in the possibility of jurors being seated who had not been reached by defendant for individual questioning.
In reversing we have not overlooked the state's arguments that defense counsel wasted time on voir dire by asking questions about such things as hobbies, interests, and clubs. It is not for us to say, however, what type of questions counsel should deem important, so long as they are not improper. Because of the age of appellant and her companions, these questions could well have been intended to give counsel information which would have been more useful than if the perpetrators had been adults.
As to the state's argument that after the defense knew its time was limited it deliberately moved slowly in order to have built-in error, there is no way that we can determine whether that in fact occurred. Although reasonable time limits are within the discretion of the court, pre-established limits, which do not "flex with the circumstances," can result in unreasonable curtailment of voir dire. Williams, at 149. This trial, from beginning to end, took two weeks. Another half hour would not have been unduly taxing, and could well have obviated reversal on this issue.
The trial court also restricted the defense from questioning prospective jurors about their beliefs as to whether a person could falsely confess to a crime. On retrial the court should allow that inquiry because in this particular case it is the essence of appellant's defense. Lavado v. State, 492 So.2d 1322 (Fla.1986).
Appellant also argues that the court erred in excluding spontaneous statements and excited utterances made by the three girls which appear to have been made about thirty to forty-five minutes after the incident. Sections 90.803(1) and (2), Florida Statutes (1993) provide for the admissibility of spontaneous statements and excited utterances, the primary difference between the two being that an excited utterance need not be spontaneous with the event. State v. Jano, 524 So.2d 660 (Fla.1988) (quoting 1 C. Ehrhardt, Florida Evidence § 802.2 at 473-74 (2d ed.1984)).
The issue of whether the necessary state of mind exists in the person making such a remark is a question of fact for the court to determine preliminarily. Jano. See generally, § 90.105, Florida Statutes. We find no error in the denial of their admission here, because they occurred after suggestions had already been made to the girls as to what they should say about the incident.
The court also excluded Powell's statements to other people that she had done the shooting. On retrial these declarations, *980 which are statements against penal interest, should be admitted. Section 90.804(2)(c), Florida Statutes.
In order for a hearsay statement to be admissible as a statement against penal interest, it must be shown that:
(1) the declarant is unavailable as a witness, (2) the statement must so far tend to subject the declarant to criminal liability that a reasonable person in the declarant's position would not have made the statement unless he or she believed it to be true, and (3) corroborating circumstances clearly indicate the trustworthiness of the statement.
Maugeri v. State, 460 So.2d 975, 977 (Fla. 3d DCA 1984) (quoting United States v. Riley, 657 F.2d. 1377, 1383 (8th Cir.1981)).
The requirements were all present here. First, Powell was unavailable as a witness because she had invoked her right against self-incrimination. Second, her statements would have subjected her to the requisite criminal liability. Third, since there was other evidence pointing to Powell as being the shooter, the trustworthiness requirement was satisfied.
We have considered the remaining issues raised by appellant and find them to be without merit. Reversed and remanded for a new trial.
PARIENTE, J., and DEAN, AMY, Associate Judge, concur.
NOTES
[1] In O'Hara we reversed for a new trial because counsel were limited to forty minutes per side to examine twenty-four prospective jurors. In Pineda v. State, 571 So.2d 105 (Fla. 3d DCA 1990), the court reversed for a new trial because the court only gave counsel 30 minutes to examine 23 prospective jurors. In Pineda the court also observed that the severity of the charges made the time limitation more unreasonable.