763 So.2d 437 (2000)
Kenneth COTTON, Appellant,
v.
STATE of Florida, Appellee.
No. 4D97-3560.
District Court of Appeal of Florida, Fourth District.
June 9, 2000.
Rehearing Denied August 18, 2000.
*438 Richard L. Jorandby, Public Defender, and Joseph R. Chloupek, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and David M. Schultz, Assistant Attorney General, West Palm Beach, for appellee.

EN BANC
TAYLOR, J.
Kenneth Cotton appeals his conviction of trafficking in cocaine of 400 grams or more. We find no abuse of discretion in the trial court's decision to proceed with appellant's trial following his rejection of the state's plea offer to lesser charges. We write only to address appellant's point on appeal that the trial court erred in precluding his cross-examination of a state witness concerning exculpatory statements appellant made at the time of his arrest. These statements pertained to his lack of knowledge that cocaine was inside a package in his possession.
Before trial, the state moved in limine to prohibit appellant from cross-examining one of the arresting officers about a statement appellant made following his arrest on a cocaine possession charge. Appellant told the officer that the package of cocaine found in his possession during a traffic stop search was handed to him by the driver immediately before the officers approached the vehicle and that he did not know that the package contained cocaine. *439 During the hearing on the motion in limine, the state assured the court that it did not intend to introduce any evidence of the appellant's statements to the officer in its case-in-chief. Nonetheless, appellant objected to the motion in limine, arguing that his statement to the police was admissible as evidence of his "state of mind" concerning a lack of knowledge that the package he possessed contained cocaine. The trial court ruled that appellant's statement was inadmissible hearsay and granted the state's motion in limine to prevent appellant from cross-examining the officer about the statement.
Thereafter, appellant testified in his own behalf. He testified that he was a passenger in a vehicle stopped for speeding on the Florida Turnpike. He said he was asleep just before the stop, but was awakened by the driver, who handed him a package and told him to hide it in his pants. Appellant denied knowing that the package contained cocaine. He said that he first learned of its contents when he was searched and the package was opened by the police. After his arrest for possession of cocaine, appellant told one of the officers that he did not know he was concealing cocaine on his person because the driver had given him the package without divulging its contents and instructed him to hide it.
Appellant argues on appeal that the trial court erred in not allowing him to bring out this favorable testimony through cross-examination of the officer. Further, he claims that the error was prejudicial because he was forced to give up his right not to testify and expose his prior criminal record to the jury. In his argument, the appellant relies on several hearsay exceptions. However, we conclude that none of the hearsay arguments raised, each of which we address, require reversal.
When a defendant seeks to introduce his own out-of-court exculpatory statement for the truth of the matter stated, it is inadmissible hearsay. Ehrhardt, Florida Evidence § 801.3 (1998); Lott v. State, 695 So.2d 1239 (Fla.1997); Logan v. State, 511 So.2d 442 (Fla. 5th DCA 1987); Fagan v. State, 425 So.2d 214 (Fla. 4th DCA 1983). However, if a defendant's out-of-court statement is not offered by the defendant to prove the truth of its content, it is not hearsay and should be admitted, provided the purpose for which the statement is being offered is relevant to a material issue in the case. See Ehrhardt, Florida Evidence § 801.3. Also, an out-of-court statement made by the defendant is admissible if it comes within an exception to the hearsay rule. A defendant's offer of his own out-of-court statement, however, does not fall under the admission exception to the hearsay rule, section 90.803(18), Florida Statutes (1997). This is so because a defendant seeking to introduce his own statement is not offering it "against a party" within the meaning of section 90.803(18).
A defendant's out-of-court statement is also allowed into evidence if it is being admitted under the rule of completeness. This rule, sometimes referred to as the doctrine of curative admissibility, entitles the defendant to bring out exculpatory portions of his statement when a state witness has testified about incriminating remarks contemporaneously made by the defendant. See Christopher v. State, 583 So.2d 642 (Fla.1991); Guerrero v. State, 532 So.2d 75 (Fla. 3d DCA 1988).
Appellant cites numerous cases in arguing that his out-of-court statement to the police should have been admitted as non-hearsay "state-of-mind" evidence. However, none of these cases apply here. In King v. State, 684 So.2d 1388 (Fla. 1st DCA 1996), the challenged out-of-court statement was not made by the defendant but by a third party to the defendant and was offered to prove the defendant's state-of-mind, i.e., that the defendant had no reason to know that the check he passed was a forgery. Similarly, in Duncan v. State, 616 So.2d 140 (Fla. 1st DCA 1993), the improperly excluded out-of-court statement *440 was not the defendant's, but the out-of-court statement of another who sold stolen tire rims to the defendant. The seller told the defendant that the tire rims had been salvaged from his wrecked pickup truck. The appellate court concluded that the seller's statement was not hearsay because it was offered to demonstrate its effect on the defendant in tending to dispel any suspicion about the unusually low price of the tire rims.
In Hansman v. State, 679 So.2d 1216 (Fla. 4th DCA 1996), a burglary and theft prosecution, we found reversible error in the trial court's exclusion of testimony of the defendant's girlfriend that she heard the owner of the baseball card collection give the defendant permission to take the collection so that he could recover insurance benefits. This evidence, we concluded, went to "the heart of the defense." Id. at 1217.
In Kent v. State, 704 So.2d 121 (Fla. 1st DCA 1997), also cited by appellant, testimony concerning conversations in which undercover officers sought to purchase cocaine from the defendant and the defendant refused to sell cocaine to them was ruled admissible as either nonhearsay, since it was not offered to prove the truth of the matter asserted, or as a state-of-mind exception to the hearsay rule under section 90.803(3). The statements tended to show either inducement by the police or the defendant's lack of predisposition and were, therefore, relevant to his defense of entrapment.
Appellant also cites Guerrero v. State, 532 So.2d 75 (Fla. 3d DCA 1988), wherein the third district reversed the defendant's grand theft conviction because the trial court prevented the defendant from cross-examining the arresting officer about explanations the defendant gave for possession of recently stolen property at the time of his arrest. However, in finding exclusion of the defendant's exculpatory statement improper, the court applied the rule of completeness, noting the unfairness of allowing the arresting officer to testify to some parts of his conversation with the defendant but to omit the exculpatory portions.
Other cases cited by appellant, Alexander v. State, 627 So.2d 35 (Fla. 1st DCA 1993) and Stiles v. State, 672 So.2d 850 (Fla. 4th DCA 1996), pertain to the hearsay exceptions of section 90.803(1)(spontaneous statement) and (2)(excited utterance), Florida Statutes (1999), as justification for admitting a defendant's exculpatory statements. Appellant has failed to show that his statement falls within one of these exceptions to the hearsay rule. The record below does not establish a time frame between concealment and discovery of the cocaine and appellant's out-of-court statement to the police describing these events such that his statement can be deemed admissible as a spontaneous statement. At most, we have only the prosecutor's estimate during argument on the motion in limine that appellant's statement was made "within the hour" of his arrest. Significantly, his statement was made after the appellant had been given his Miranda warnings. See Logan v. State 511 So.2d 442 (Fla. 5th DCA 1987)(exculpatory statements made by defendant to arresting officer four hours after burglary were hearsay and self-serving), (citing Fagan v. State, 425 So.2d 214 (Fla. 4th DCA 1983)); Rodriguez v. State, 591 So.2d 308 (Fla. 3d DCA 1991)(exculpatory hearsay statement at time of arrest approximately two and one-half months after the crime properly excluded); Watkins v. State, 342 So.2d 1057 (Fla. 1st DCA 1977)(trial court did not err in refusing to permit defendant to testify as to statement he made to police officers at police station after crime because such statements were not part of res gestae and were self-serving).
The record is similarly devoid of any evidence that would qualify appellant's statement as an excited utterance under 90.803(2). Whether the necessary state of mind is present for a court to admit a *441 statement as an "excited utterance" exception is a preliminary fact for the trial court's determination. Ehrhardt, Florida Evidence § 803.2 (1998 Ed.); Perry v. State, 675 So.2d 976 (Fla. 4th DCA 1996). Our standard of review is abuse of discretion. Alexander v. State, 627 So.2d 35 (Fla. 1st DCA 1993). In this case, there was not a sufficient factual predicate laid upon which we can conclude that the trial court abused its discretion in denying admission of appellant's statement under 90.803(2). See Ehrhardt, Florida Evidence § 803.2 (1998)(reviewing factors that the trial judge can consider in determining whether the necessary state of stress or excitement is present to conclude that the statements were excited or impulsive rather that the product of reflection and deliberatione.g., the declarant's age, physical and mental condition, the nature of the event, and subject matter of the statements).
Appellant's strongest case law support lies in Henry v. State, 566 So.2d 29 (Fla. 4th DCA 1990). In Henry, we determined that the trial court erred in precluding cross-examination of a law enforcement witness concerning exculpatory statements made by a defendant charged with narcotics possession. During a consent search, the defendant explained how he acquired a suitcase containing cocaine. We ruled that the defendant was entitled to ask the officer about his statements, even though they were self-serving and although the officer testified only about the physical conduct of the search and not about any contemporaneous conversation with the defendant. We found, however, that the error in Henry was harmless because the evidence was subsequently testified to on defense and the defendant could have recalled the officer as a witness.
As appellant points out, it is unclear upon what evidentiary basis we determined the defendant's statements to be admissible in Henry. The state surmises that, because Henry cites Coco v. State, 62 So.2d 892 (Fla.1953) and Eberhardt v. State, 550 So.2d 102 (Fla. 1st DCA 1989), the rule of completeness was implicated. However, as mentioned above, the officer in Henry did not testify about any conversation he had with the defendant during the search but only about the physical conduct of the search. Thus, there is no basis for concluding that the state introduced any statements by the defendant that triggered the admission of exculpatory remarks to complete the whole context of the conversation. Cf. Eberhardt, 550 So.2d at 105.
Further, from our review of Henry, we are unable to find an exception to the hearsay rule or discern some purpose other than proving the truth of the statement's content that might have led to our conclusion that the defendant's statement to the officer was admissible. We acknowledge that Henry allows for a very broad interpretation of the admissibility of a criminal defendant's hearsay statement and, therefore, take this opportunity to clarify our position. We recede from Henry to the extent that it holds that a defendant's out-of-court exculpatory statement is, in general, admissible. We hold, instead, that a defendant's out-of-court exculpatory statement is hearsay if offered by the defendant for the truth of the matter stated therein and should not be admitted unless it falls within one of the exceptions to the hearsay rule or is admissible under some other principle of fairness, such as the rule of completeness.
In this case, appellant argues that his post-arrest statement to the police denying ownership and knowledge of the cocaine was not hearsay because, as defense counsel argued to the trial court, it was not offered for the truth of the statement but to show that he made the statement. However, the mere fact that the defendant made the statement to the police is not relevant to any material fact or issue in this case. What is relevant to his defense is the content of the statementi.e., that the driver handed him the package for him to hide and that he did not know it contained *442 cocaine. The statement was, in essence, offered to prove the truth of the matter asserted in the statement. Thus, it qualifies as hearsay.
Appellant argues alternatively that his denial of guilty knowledge to the police comes within a "state of mind" exception to the hearsay rule. As discussed above, the cases relied upon by appellant for this position involved statements made by persons other than the defendant that were offered to show their effect upon the defendant's then-existing state of mind to explain his alleged criminal acts. In this case, however, appellant sought to introduce his own post-arrest statement to the police, wherein he explained his prior state of mind and conduct surrounding possession of the cocaine. His denial of guilty knowledge of the cocaine cannot be construed as a statement of then-existing state of mind offered for the reasons contemplated by section 90.803(3). Rather, his statement is precisely the type of self-serving exculpatory statement that has been traditionally regarded as inadmissible hearsay because of its lack of reliability and trustworthiness. See Fagan, 425 So.2d at 215.
Based on the above, we find that the trial court did not abuse its discretion in precluding appellant's cross-examination of a state witness concerning exculpatory statements appellant made at the time of his arrest. Accordingly, we affirm the judgment of conviction and sentence.
AFFIRMED.
WARNER, C.J., DELL, STEVENSON, SHAHOOD, and HAZOURI, JJ., concur.
FARMER, J., concurs with opinion, in which GUNTHER, STONE and POLEN, JJ., concur.
KLEIN, J., concurs specially with opinion, in which GROSS, J., concurs.
FARMER, J., concurring.
I should confess that I have an aversion to many of the exclusionary provisions of the evidence code. It seems to me that much of it is built on a puritan sensitivity and an exaggerated fear that nonlawyer jurors will be so contaminated by knowing some things that they will perversely refuse to comply with a court's instructions. Some of the evidence rules are akin to the familiar parental interdiction, "not in front of the children." In my view such fears ignore the fundamental common sense of most jurors. The case at hand is a case in point.
In this instance, an out-of-court exculpatory statement of a defendantmade at or near the moment of detection of the crime and resulting arrestis deemed not admissible. Why that should be is not explained in the evidence code, in the cases, or even in the court's opinion, which merely saysand not incorrectly"that's the way it is." I do not quarrel with the fact of authority to support the decision. See, e.g., Christopher v. State, 583 So.2d 642 (Fla.1991) ("the statute does not allow a party to introduce his own exculpatory hearsay statements."); and Fagan v. State, 425 So.2d 214 (Fla. 4th DCA 1983) (defendant's exculpatory statement to arresting officer not admissible as hearsay and not covered by exceptions for res gestae, statement against penal interest and admissions of a party opponent). I rather challenge its wisdom.
Before showing why such evidence should be admissible, I note that paradoxically there is authority for a converse proposition. Statements made by the adverse counterpart to the defendant during the heat of a crime and arrest, are well within the spontaneous statement or excited utterance exceptions to the hearsay rule. See, e.g., Garcia v. State, 492 So.2d 360 (Fla.), cert. denied, 479 U.S. 1022, 107 S.Ct. 680, 93 L.Ed.2d 730 (1986) (police officer's testimony as to what surviving victim told him when he asked what happened at scene of murders was admissible under res gestae rule; victim's response, made at the crime scene with victim's survival *443 still in doubt, was a "contemporaneous utterance," was spontaneous, sprang from stress, pain and excitement of shootings and robberies, and was consistent with her later testimony.)[1] I see little logic in excluding an exculpatory statement made by a defendant under identical circumstances as those allowing an inculpatory statement by a prosecution witness at the time of detection and arrest. The very reasons that permit functionally indistinguishable evidence to be admitted to show guilt argue even more strongly for its admission to show a reasonable doubt of guilt.
From the record in this case it is apparent that the declaration was made within a very short span of time connected to defendant's detection and arrest. He was riding as a passenger in a vehicle stopped for a traffic violation. One of the two officers approached the passenger side of the vehicle and saw defendant sitting in the front passenger seat with a large bulge under his clothing at the midsection. That officer ordered defendant out of the vehicle and performed a consent search. He detected the package causing the bulge and supposed it to be illegal drugs. Straightaway, he and the other officer performed a field test of the substance in the presence of defendant and concluded on the spot that indeed it contained illegal drugs.
After they placed defendant under arrest, apparently one of the officers asked why the driver did not immediately stop when the police vehicle flashed its blue lights and motioned him to pull to the side of the road. We have no way of knowing whether the question was directed to both occupants of the vehicle, or merely one of them. In any case, defendantwho was indisputably not driving the vehicledeclared that the driver pushed the package at him as the vehicle was being ordered to the side of the road, with a request that defendant hold it for him, and that he had no idea what was inside the package. Whether the declaration was a response to the question, or instead a gratuitous aside, is not addressed. It is this statement that defendant unsuccessfully sought to elicit at trial during cross examination of the officer who had searched him.
Judge Klein argues in his concurring opinion that defendant's statement was properly excluded because it was made after the customary caution of Miranda warnings and while defendant was being interrogated. This assertion is based on the fact that the statement was made during interrogation, not from testimony of the officer, but instead from comments between the trial judge and counsel during argument on the state's oral motion in limine to exclude the defendant's statement. Actually for all we know, the "interrogation" consisted of the single question as to why the vehicle did not immediately pull over.
In any event, the implication is that the administration of Miranda warnings has some effect negating spontaneity. No one has explained how the administration of Miranda warnings is flatly inconsistent with genuine spontaneity. From one perspective, the fact that a defendant gave up his right of silence after the warnings and proclaimed his innocence might be seen as adding reliability rather than subtracting it. Here defendant's statement contains a concession of possession of the substance but disputes knowledge of its character and proceeds to explain how he came by it. Reasonable minds could easily view this as evidencing even greater signs of trustworthinesscoming, as it did, after being warned to remain silent.
*444 Apart from the business of Miranda warnings, however, as defense counsel argued at the motion in limine, the law allows testimony by an officer in identical circumstances to establish in culpatory statements made by a defendant after the administration of Miranda warnings. Inculpatory statements are admissible as against the penal interest of the declarant, even though the testimony is hearsay. Why the rule should be any different for ex culpatory statements of criminal defendants is a mystery to me. I should think as a matter of epistemology that a firm declaration of innocence by one who is truly innocent is no less reliable as evidence than declarations against penal interest by the guilty. Certainly the majority makes no case against the reliability of such statements.
Christopher rejects admissibility under the res gestae exception, which is addressed in our evidence code in two different provisions.[2] Section 90.803(1) allows spontaneous statements into evidence,[3] while section 90.803(2), in turn, allows excited utterances.[4] I disagree with the supreme court's unexplained conclusory rejection of res gestae for this kind of hearsay. Defendant's statement to the arresting officer at the time of arrest surely attempts to describe his perception of the event in which contraband was found on his person. If the pretrial colloquy with counsel is to be believed, he apparently made the statement after being warned and perhaps after a question had been posed as to why the other man driving the car did not instantly pull to the side of the road after the officer had flashed his blue light and ordered him to do so. Under the circumstances described, it is possible that defendant's exculpatory statement was both excited and spontaneous. After all, he had just been arrested for possession of cocaine that he claims he didn't know he had.
It seems perfectly logical to me that exculpatory statements by a defendant at the moment of arrest may qualify as spontaneous or excited utterances within the meaning of these particular exceptions to the hearsay rule. Indeed most people may have trouble imagining a more exciting event outdoors than being placed under arrestespecially if one is truly innocent. Although the court in Christopher did not expressly say so, we know from experience built up in years of voir dire examination of potential jurors in criminal cases that *445 there are circumstances when ordinary peopleand not without some logicmay deem silence inculpatory, as when a truly innocent person might be expected to protest one's innocence at once and without prompting.
The now customary Miranda warnings state that a defendant need not speak to the officer and may thereby keep his protestation of innocence for another day and another person. But if an arrestee chooses to voluntarily waive the right of silence at the moment of arrest and proclaim innocence, I do not understand how his proclamation should be thought so inherently untrustworthy as to be categorically inadmissible as evidence, particularly by a genuinely innocent person.
Equally unavailing to my mind is the oft-heard justification that the hearsay is not admissible because it is self-serving. The self-serving nature of evidence is hardly a practical yardstick for judging its inherent legitimacy. Indeed it would be quite unusual for a party in a trial to offer evidence that did not serve the party's position in some way. The evidence code lacks an express authorization to exclude evidencewhether labeled as hearsay or otherwisesimply because the proposed evidence is thought to be self-serving. Because all evidence must necessarily serve the litigation positions of the party offering it, I do not think that the section 90.803(1) threshold requirement of trustworthiness for admission can or should logically turn on whether the proposed evidence is self-serving. It could hardly be otherwise.
While I entirely agree that a criminal defendant's self-generated eruption of innocence is certainly designed to serve his interest in acquittal, I do not believe that this fact alone renders it inherently unreliable as evidence. Some such statements may indeed be the calculated duplicity of the guilty. But others, those of the truly innocent, will be quite genuine and sincere, even though manifestly self-serving. Because there is no reliable mechanism to determine which are genuine, I do not believe in an evidence code that would categorically exclude them all as unreliable. The believability of this kind of protestation should belong to the jury alone, for such decisions are at the core of the issue of guilt or innocence. To exclude them all at the very gate to the factfinder is to derogate the jury system.
In constructing an evidence code that purports to exclude hearsay and then proceeds to recognize multiple and diverse exceptions, we should allow for self-declarations of innocence in a criminal case. While the foundation circumstances are often inconclusive and genuineness is thus merely arguable, I believe that the issue should be for the jury to resolve under appropriate instruction. Allowing the judge to exclude such defensive evidence entirely as a threshold matter of admissibility, simply because admissibility turns on the inferences one can indulge from those circumstances, has the effect of denying a criminal defendant his right to have a jury resolve the essential factual issue of guilt. Any issue of spontaneity in proclaiming one's innocence is too distinctly integral to the essential issue of guilt or innocence and therefore is tied to the jury's exclusive function as finders of fact, rather than the judge's function of gatekeeping for evidence.
We must not forget that this is a criminal prosecution in which the state has attempted to exclude relevant evidence of innocence. The general rule is that all relevant evidence is admissibleand this declaration is undeniably relevantunless otherwise made inadmissible by the evidence code. See § 90.402 Fla. Stat. (1999). Because of the presumption of innocence, the law favors the admission of any relevant evidence that tends to show a reasonable doubt. Rivera v. State, 561 So.2d 536, 539 (Fla.1990) ("where evidence tends in any way, even indirectly, to establish a reasonable doubt of defendant's guilt, it is error to deny its admission."); Story v. State, 589 So.2d 939, 942 (Fla. 2d DCA 1991) ("relevant evidence should not be *446 excluded unless no other remedy suffices."); Moreno v. State, 418 So.2d 1223, 1225 (Fla. 3d DCA 1982) ("Where evidence tends, in any way, even indirectly, to prove a defendant's innocence, it is error to deny its admission."). Apart from simple fairness, the broad admissibility rule for exculpatory evidence is arguably within the right of the accused to essential due process.[5]
I recognize that the trial court's prohibition of the introduction of this evidence through the cross examination of the officer did not preclude the defendant from taking the stand and himself testifying that he did make the statement. There is a world of difference, however, between a defendant testifying that he immediately proclaimed his innocence and a police officer testifying that defendant immediately proclaimed his innocence. Defendant's testimony is no substitute for the officer's concession that defendant did actually assert innocence at the very moment of arrest. By excluding the evidence during cross examination of the arresting officer, the trial court has deprived the jury of knowing that the officer would confirm that defendant in fact did so. Hence, it is simply not true to suggest that the exclusion of the evidence during cross examination does not affect any substantial interest of the defendant in the presentation of the evidence.
I do not imagine that jurors will always give great weight to exculpatory proclamations of innocence at the moment of arrest. When the state is able to mount a case that strongly shows a defendant guilty beyond a reasonable doubt, a single protestation of innocence is unlikely to have much influence on the jury's ultimate decision. In a few cases, however, where the circumstances may also appear consistent with actual innocence, the admission of the kind of protestation present in this case may very well swing the result for some jurors. It is because I cannot confidently say where this case lands in the spectrum that I think it harmful error to have excluded the hearsay during the state's case in chief.
I therefore concur in the result in this case because we are bound to follow Christopher v. State, but I disagree with it.
GUNTHER, STONE and POLEN, JJ., concur.
KLEIN, J., concurring specially.
I agree entirely with the majority opinion and am writing only to respond to Judge Farmer's concurring opinion. The issue regarding the exculpatory statement was addressed in the trial court when the state made a motion in limine to keep the defendant from cross examining one of the officers about the exculpatory statements. The prosecutor stated:
Judge, there is a..a statement that the..to give you briefly the defendant makes a statement to the officer about what the driver said to him during the course of..prior to being pulled over. He's the passenger in the vehicle. The statement that is made is something to the affect that, "Here hide it," and he hands `em over a kilo of cocaine. It's the state's position that the statement in and of itself is hearsay.
The court agreed that this was hearsay and then heard from defense counsel who responded:
MS. JACOBS: ... Mr. Cotton was in custody.
THE COURT: Okay.
MS. JACOBS: ..be..he had been given his Miranda warnings.
THE COURT: Okay.

*447 MS. JACOBS: He was being questioned by the police in reference to the stop. He had been asked a question about what happened or why didn't they stop when the ... he was not the driver, he was a passenger, when the blue light came on? His response was, that the driver handed him ... handed it to him and told him to hide it. The reason that they didn't stop was because the driver handed it to ... it to him and told him to hide it in his pants, and that was the statement. The officers' are going to testify that they saw movement in the car, unusual movement, a lot of movement is what they're going to testify to, and what they've said in deposition. This movement raised their suspicion. They could see movement of the driver, movement of the passenger. And I believe that this ... the act that the state is..is speaking about is not hearsay in this particular situation.
THE COURT: It is hearsay.
MS. JACOBS: All right, Your Honor, it is hearsay.
THE COURT: But you're..you're gonna'..
MS. JACOBS: But I mean ...
THE COURT: ..you're..I'm assuming you're gonna' tell me why there should be an exception to the hearsay rule now.
MS. JACOBS: Your Honor, it's ... it's..number one his state of mind is first of all in question here, and the question of knowledge whether he knowingly did something. The statement would be offered to show not so much for the truth of it, but that he made the statement and he was consistent with the actions in this case. It was..It almost..it..it was short..made shortly ...
THE COURT: Is..Is..Is..Is the driver available to testify?
MS. JACOBS: No, your Honor, the driver is not available to testify.
As the majority opinion points out, whether a statement is an "excited utterance" is a preliminary fact to be determined by the trial court, Perry v. State, 675 So.2d 976 (Fla. 4th DCA 1996), and our standard of review is abuse of discretion, Alexander v. State, 627 So.2d 35 (Fla. 1st DCA 1993). The case primarily relied on by the dissent, Monarca v. State, 412 So.2d 443 (Fla. 5th DCA 1982) is distinguishable, because in that case, the trial court found the necessary state of mind present for the statement to be admissible. In the present case the trial court found it was not admissible. I find no abuse of discretion in the exclusion of statements made by the defendant, after he was given his Miranda warnings and was being interrogated, as to why he had possession of the cocaine.
GROSS, J., concurs.
NOTES
[1] It is curiously ironic that the functional mirror of the protestation of innocence is admissible in a civil action for damages from a motor vehicle collision. See Martinez v. Vega, 751 So.2d 1268 (Fla. 3rd DCA 2000) (plaintiff's out of court statement to investigating officer in action for damages from motor vehicle collision that defendant had "run the light" admissible as excited utterance).
[2] Judge Klein's concurring opinion implies, without directly saying so, that res gestae as grounds for admission was not argued at the hearing on the motion in limine. I disagree. After the colloquy quoted by Judge Klein, the following exchange occurred:

JUDGE: How long after the arrest was the statement made, if roughly you know?
PROSECUTOR: After the arrest? I would guesstimate, Judge, within an hour. However I understandand correct me if I'm wrongyou're looking for possibly an excited utterance exception. It doesn't fit under excited utterance because we're not dealing with a direct statement of defendant given to the officer. We're talking about the defendant's statement of a third party." [e.s.]
Even before this exchange, the court had made clear that the state would have to show that no exception to the hearsay rule would allow for admission if the court were to grant the state's motion in limine to exclude the testimony.
To those who think that the term "res gestae" is a meaningless latinism long since replaced by the evidence code's use of different terms, I observe that its use serves a purpose in that it saves counsel from identifying two separate statutes by encompassing them in a single locution. Moreover, here the trial judge had no trouble understanding that counsel's use of "res gestae" referred to section 90.803(1) and (2).
[3] See § 90.803(1), Fla. Stat. (1999) ("a spontaneous statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter, except when such statement is made under circumstances that indicate its lack of trustworthiness.").
[4] See § 90.803(2), Fla. Stat. (1999) ("a statement or excited utterance relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.").
[5] The state also argues that "a defendant seeking to introduce his own statement is not offering it `against a party.'" This rationale cannot possibly be correct. The context is thus: the state offered the officer's testimony to prove defendant guilty; and defendant in turn sought to elicit the hearsay declaration to show a doubt about his guilt. Is the state not a party? If that is not "offering [the statement] against a party," I cannot conceive what other purpose lay behind defendant's purpose in offering this evidence.