DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**BRANDON HINCK,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D17-2198

[December 5, 2018]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael A. Robinson, Judge; L.T. Case No. 14015578 CF10A.

Carey Haughwout, Public Defender, and Claire V. Madill, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Mitchell A. Egber, Assistant Attorney General, West Palm Beach, for appellee.

GERBER, C.J.

The defendant appeals from his conviction for attempted second-degree murder, following an altercation in which the defendant stabbed the alleged victim multiple times. The defendant primarily argues that the trial court erred in sustaining the state's hearsay objection to the testimony of a witness who heard the defendant's alleged excited utterance less than a minute after the altercation, which testimony corroborated the defendant's recitation of the alleged excited utterance and supported his self-defense claim. We agree with the defendant's argument and reverse for a new trial.

### *The Trial Evidence*

The alleged victim testified as follows. Using a social media website, he and the defendant agreed to meet for a sexual encounter. The alleged victim drove to pick up the defendant at a gas station. From there, they drove to a restaurant. During the drive and at the restaurant, the alleged victim and the defendant discussed their sexual interests. The defendant

explained that, in the past, he had only female sexual partners, but he wanted to explore his attraction to men.

The alleged victim and the defendant ultimately went to the alleged victim's third floor hotel room for their sexual encounter. According to the alleged victim, shortly after they arrived in the hotel room, the defendant, without provocation, took out a knife, and slashed the victim's throat. As the alleged victim tried to escape through the hotel room door, the defendant continued to stab the alleged victim in the torso and in the back of the head. The alleged victim managed to knock the knife out of the defendant's hand and then open the hotel room door. As the alleged victim struggled to leave the room, the defendant ran past the alleged victim and fled down the hallway to the elevator.

The defendant chose to testify in his case-in-chief. According to the defendant, soon after going into the hotel room, he changed his mind about the sexual encounter and tried to leave. However, the alleged victim blocked the defendant, began groping the defendant, pushed the defendant down onto the bed, and got on top of the defendant's legs. The defendant began screaming. The alleged victim then said "he had turned many guys before but [the defendant] was feistiest." The defendant, believing that the alleged victim was going to rape him, removed a knife from his front pocket, flicked it open, and slashed the victim's throat. The defendant raced to the hotel room door, but the alleged victim got to the door first and held it shut, preventing the defendant from leaving. The defendant reacted by wildly slashing at the victim. The defendant then dropped the knife and ran out of the room. The defendant ran to the elevator and took "less than a minute" to get from the third floor to the lobby, where he found a hotel employee. The defendant testified that while still in shock and terrified, he told the hotel employee: "[T]here is a guy . . . he tried to molest me, I stabbed him, please call [t]he police and ambulance." The defendant stayed until the police arrived. The defendant suffered no injuries.

Next, the defendant sought to call the hotel employee as a witness. Defense counsel alerted the court that an evidentiary issue existed which the court may wish to consider outside the jury's presence. According to defense counsel, the hotel employee would testify that she saw the defendant come down to the lobby in a very excited state and immediately said, "I've just been attacked, call the police." The state responded that it "would be objecting in the sense that it is a self-serving statement made by the defendant." The defendant replied, "it comes under the hearsay exception of excited utterance."

Defense counsel then conducted the following proffer with the hotel employee:

> DEFENSE COUNSEL:  [T]ell me how you came into contact with [the defendant].
>
> HOTEL EMPLOYEE:  I was at the front desk and he came from behind.
>
> . . .
>
> DEFENSE COUNSEL:  And clothing-wise what did you notice that was odd?
>
> HOTEL EMPLOYEE:  He was bloody everywhere.
>
> DEFENSE COUNSEL:  Okay.  And now the demeanor, how he was, how he was acting, can you describe that for the Court?
>
> HOTEL EMPLOYEE:  Yes.  He was shaking, he was scared, he was like muttering like trying to get the words out.
>
> . . .
>
> DEFENSE COUNSEL:  And what, what did he tell you?
>
> HOTEL EMPLOYEE:  [A]t first I was shocked, I looked and he was like: Help, I've been attacked, I stabbed someone . . . And then I said what?  And then he was like: Yes, I've been attacked, help, I stabbed someone.  And I said where and he said on the third floor.  And, yeah, that's what he said.
>
> DEFENSE COUNSEL:  And was his statement "I've been attacked; I stabbed someone" was that in response to any question that you posed to him?
>
> HOTEL EMPLOYEE:  No.
>
> DEFENSE COUNSEL:  It was just a spontaneous uttering?
>
> HOTEL EMPLOYEE:  The only question I asked him was where.

3

DEFENSE COUNSEL:  And did this happen . . . immediately when he saw you, came up to you?

HOTEL EMPLOYEE:  Yes.

Following the proffer, the state argued that the hotel employee had no knowledge of the defendant's ordinary manner of speaking.  The state acknowledged that the defendant made the statement to the hotel employee close in time to the altercation.  However, the state argued that the statement was a self-serving statement and not an excited utterance.

Defense counsel reiterated the argument that the statement was an excited utterance, because the defendant made the statement less than a minute after the altercation, and both the defendant and the hotel employee testified "he was frightened, he was terrified by what he saw."

The trial court sustained the state's objection.  The trial court reasoned:

> The rule is clear in terms of hearsay.  801 suggest[s] obviously that it's hearsay and I do find it's hearsay.  I don't find any exceptions applicable to that particular statement.  I do find that it is self-serving but more importantly it goes into exculpatory statements by a defendant.  And there are a number of cases that would suggest that the statement is not admissible even if it were under an exception. . . .
>
> And the cases that I'm relying on include *Rodriguez v. State*, 591 So. 2d 308 [(Fla. 3d DCA 1991)].  You got *Logan v. State*, 511 So. 2d 442 [(Fla. 5th DCA 1987)].  *Fagan v. State*, 425 So. 2d 214 [(Fla. 4th DCA 1983)].  And . . . *Cotton v. State*, 763 So. 2d 437 [(Fla. 4th DCA 2000)].
>
> The defendant is trying to introduce his own statement through somebody that's exculpatory and for the truth of the matter asserted.  Under the cases I just cited including the *Cotton* case[,] that will not allow this Court to admit that particular statement.  [The hotel employee's] observations are one thing, what she saw is not hearsay so she can testify as to her own observation.  But as far as what the defendant said it is hearsay, not within exception, exculpatory, and self-serving . . . .

Hence . . . I'm not going to allow the exculpatory statement, [the hotel employee] is not allowed to testify regarding the statement that [the defendant] made.

Defense counsel stated that because of the trial court's ruling, the defendant would not be calling the hotel employee as a witness. Instead, the defendant rested his case.

The jury found the defendant guilty of attempted second-degree murder as charged in the information.

### *This Appeal*

This appeal followed. The defendant argues the trial court erred in sustaining the state's objection to the hotel employee's proffered recitation of the defendant's alleged excited utterance, which recitation corroborated the defendant's testimony and supported his self-defense claim.

### A. *Standard of Review and the Applicable Rules and Case Law*

Our standard of review is abuse of discretion, limited by the rules of evidence. *Dunbar v. State*, 230 So. 3d 8, 11 (Fla. 4th DCA 2017).

Section 90.801(1)(c), Florida Statutes (2017), defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

Section 90.802, Florida Statutes (2017), provides that hearsay is inadmissible unless an exception exists under section 90.803 or section 90.804, Florida Statutes (2017).

Section 90.803(2), Florida Statutes (2017), defines the "excited utterance" exception to the hearsay rule as: "A statement or excited utterance relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

To determine whether a statement qualifies as an "excited utterance" under section 90.803(2), the Florida Supreme Court has set forth a three-prong test:

[T]he statement must be made: (1) regarding an event startling enough to cause nervous excitement; (2) before there was time

to contrive or misrepresent; and (3) while the person was under the stress or excitement caused by the event.

*Hayward v. State*, 24 So. 3d 17, 29 (Fla. 2009) (citations and internal quotation marks omitted).

Elaborating upon the second prong, we have held:

There is no bright line standard by which to measure the length of a permissible time gap between a [startling event] and a [declarant's] statement for purposes of analyzing the admissibility of the statement as an excited utterance. Instead, where the time interval between the event and the statement is long enough to permit reflective thought, the statement will be excluded in the absence of some proof that the declarant did not in fact engage in a reflective thought process.

*Rivera v. State*, 718 So. 2d 856, 858 (Fla. 4th DCA 1998) (citations and internal quotation marks omitted).

## B. *The Trial Court's Reasoning was Incorrect*

As stated above, the trial court sustained the state's objection to the hotel employee's proffered recitation of the defendant's statement, reasoning "that it is self-serving but more importantly it goes into exculpatory statements by a defendant. And there are a number of cases that would suggest that the statement is not admissible even if it were under an exception."

The trial court's reasoning was incorrect. We have held, where a defendant's statement qualifies as an excited utterance admissible under section 90.803(2), "[t]he mere fact that statements are self-serving *is not, in and of itself*, a sufficient evidentiary basis for their exclusion from evidence." *Stiles v. State*, 672 So. 2d 850, 851-52 (Fla. 4th DCA 1996) (emphasis added; citation omitted).

Moreover, the four cases upon which the trial court relied – *Rodriguez v. State*, 591 So. 2d 308 (Fla. 3d DCA 1991); *Logan v. State*, 511 So. 2d 442 (Fla. 5th DCA 1987); *Fagan v. State*, 425 So. 2d 214 (Fla. 4th DCA 1983); and *Cotton v. State*, 763 So. 2d 437 (Fla. 4th DCA 2000) – are all distinguishable. The first three cases did not involve situations in which a defendant was seeking to admit his own statements through section 90.803(2)'s excited utterance exception. The fourth case, *Cotton*, was

"devoid of any evidence that would qualify appellant's statement as an excited utterance under [section] 90.803(2)."  763 So. 2d at 440.

Thus, the question we now turn to in this case is whether sufficient evidence existed that would qualify the defendant's statement to the hotel employee as an "excited utterance" under section 90.803(2).

## C. *The Defendant's Statement Qualified as an Excited Utterance*

We conclude sufficient evidence existed to qualify the defendant's statement to the hotel employee as an "excited utterance" under section 90.803(2), as interpreted by our supreme court's three-prong test.  We examine each prong in turn.

First, the stabbing was an event startling enough to cause nervous excitement.  *See Harmon v. State*, 854 So. 2d 697, 699 (Fla. 5th DCA 2003) ("[A] bloody fight [is] an event startling enough to cause nervous excitement.").

Second, sufficient evidence existed to show that the defendant made his statement to the hotel employee before there was time to contrive or misrepresent.  It is undisputed that the amount of time between the altercation and the defendant's statement to the hotel employee was less than one minute, during which the defendant ran down the hallway, took an elevator to the lobby, and immediately approached the hotel employee. The state presented no evidence to show that, during that time interval and under those circumstances, the defendant contrived or misrepresented his statement to the hotel employee.  Further, the state presented no evidence, and the trial court articulated no evidence, that the defendant's age or physical or mental condition, or the event's characteristics, justified a finding that the defendant's statement to the hotel employee was contrived or misrepresented.  Although the state argued, and the trial court found, that the defendant's statement to the hotel employee was exculpatory, i.e., self-serving, the state presented no evidence, and the trial court articulated no evidence, to justify the finding that the mere self-serving nature of the defendant's statement automatically required excluding the hotel employee's testimony reciting the defendant's statement.

Third, the hotel employee described the defendant as a person still under the stress or excitement caused by the event.  *See Lopez v. State*, 888 So. 2d 693, 697 (Fla. 1st DCA 2004) (evidence supported the trial court's finding that the victim was under the stress of startling event where the victim appeared "nervous or shaken up and . . . was speaking rapidly").

### D. *The State's Cited Cases are Unpersuasive*

The state nevertheless maintains in response to the defendant's appeal that his statement to the hotel employee did not qualify under the excited utterance exception's second prong – that is, before there was time to contrive or misrepresent – because his statement was self-serving. In support of this argument, the state relies on *Sunn v. Colonial Penn Ins. Co.*, 556 So. 2d 1156 (Fla. 3d DCA 1990), and *Overton v. State*, 429 So. 2d 722 (Fla. 1st DCA 1983).

*Sunn* is not persuasive. In *Sunn*, the Third District's analysis conflated the "spontaneous statement" exception under section 90.803(1) with the "excited utterance" exception under section 90.803(2):

> [T]he [appellees] argue, *inter alia,* that the statements were properly admitted *under the spontaneous exclamation or excited utterances exceptions to the hearsay rule contained in Section 90.803(1) and (2),* Florida Statutes (1987).
>
> The factors to be analyzed in determining whether a statement qualifies *under the exceptions* are: (a) the time gap between the incident and the statement, (b) the voluntariness of the statement, (c) whether the statement is self-serving, and (d) the declarant's mental and physical state at the time the statement was made.

556 So. 2d at 1157-58 (emphasis added; footnote omitted).

The fact that the *Sunn* court conflated the "spontaneous statement" exception and the "excited utterance" exception is significant. The "spontaneous statement" exception, besides being different in substance from the "excited utterance" exception, also facially contains an element which the "excited utterance" exception does not.

Section 90.803(1), Florida Statutes (2017), defines the "spontaneous statement" exception to the hearsay rule as follows: "A spontaneous statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter [is admissible], *except when such statement is made under circumstances that indicate its lack of trustworthiness.*" (emphasis added).

However, section 90.803(1)'s requirement to exclude a spontaneous statement "when such statement is made under circumstances that indicate its lack of trustworthiness" is conspicuously absent from the plain

language of section 90.803(2)'s excited utterance exception. *See* § 90.803(2), Fla. Stat. (2017) ("A statement or excited utterance relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.").

We recognize that the "spontaneous statement" exception's "lack of trustworthiness" element may be considered as subsumed under the "excited utterance" exception's second prong – that is, "before there was time to contrive or misrepresent." However, we nevertheless maintain our previous holding that where a defendant's statement otherwise qualifies by evidence as an excited utterance, "[t]he mere fact that statements are self-serving *is not, in and of itself*, a sufficient evidentiary basis for their exclusion from evidence." *Stiles*, 672 So. 2d at 851-52 (emphasis added; citation omitted).

The state's reliance on *Overton* is similarly unpersuasive. In *Overton*, the First District's opinion on this issue states as follows:

> [The defendant] complains that it was error to disallow testimony concerning his exculpatory statements made immediately upon apprehension as those statements fall within the res gestae exception to the hearsay rule and therefore are admissible, citing Section 90.803(2) relating to "excited utterance." . . . The deputy's proffered testimony was to the effect that [the defendant] told him he had "the wrong guy" and that the police were letting the "right guy" get away. [The defendant's] professed purpose of offering the statement was to show his state of mind at the time of apprehension and to show that he did not have time to fabricate his version of the events. *The trial court was correct in sustaining the state's objection on the ground that the statement was "self-serving." Although the statement was made at the time of . . . apprehension and may be considered as part of the res gestae, if it is so self-serving and made under circumstances that indicate its lack of trustworthiness, then it should be excluded. See Section 90.803(1), Florida Statutes (1981).*

429 So. 2d at 723 (emphasis added). Thus, the First District's opinion ultimately was based not on section 90.803(2)'s "excited utterance" exception, but on section 90.803(1)'s "spontaneous statement" exception, including its express element that the statement not be made "under circumstances that indicate its lack of trustworthiness."

### E. *One More Recent Case for Comparison*

Our research has discovered one recent case, *Beckman v. State*, 230 So. 3d 77 (Fla. 3d DCA 2017), which neither party's brief has discussed, but which addresses the argument upon which the state seeks to prevail in this case – that the defendant's self-serving statement should not be admitted under the excited utterance exception. We shall examine *Beckman* in detail here, because the cases are distinguishable.

In *Beckman,* a teenager shot his father with a shotgun. 230 So. 3d at 82. Within one minute of the shooting, the defendant called out, "Oh my God, call 911," loud enough for a neighbor to hear. *Id.* During the 911 call, the defendant stated, "Please, come quickly, I accidentally shot my father." *Id.* The defendant then explained that he was going hunting with his father and went to the bathroom to show his father the shotgun. *Id.* The defendant claimed the gun accidentally went off, even though the safety was on. *Id.*

The state did not dispute that the 911 call was made instantly after the shooting and that the defendant sounded hysterical on the call. *Id.* at 89. Nevertheless, the trial court excluded the content of the defendant's 911 call, finding that the content did not satisfy the "excited utterance" exception because the defendant had an opportunity to reflect before making the call. *Id.* In so ruling, the trial court relied upon the testimony of a witness that "*two weeks prior to the shooting,* the defendant had both shown [the witness] the shotgun and said that *he wanted to shoot his father with it and make it look like self-defense.*" *Id.* at 83 (emphasis added).

On appeal, the defendant claimed the trial court abused its discretion by excluding the content of the defendant's 911 call. The Third District rejected this argument:

> Here . . . the trial court was concerned that the defendant's statements to 911 dispatch were not at all "spontaneous" given the defendant's stated motivation to stage the shooting death of his father with a shotgun that he showed his friend . . . which had occurred just two weeks before the defendant actually shot his father with the same shotgun. The court therefore excluded the defendant's comments to the 911 operator because there was evidence that the defendant had contrived both the shooting (the startling event) and the 911 call (the out-of-court statement).

In essence, the court below excluded the 911 call because the defendant could not satisfy his burden of demonstrating that he was under any stress or excitement at the time he called 911 and gave his self-serving statement. "The mere fact that statements are self-serving is not, in and of itself, a sufficient evidentiary basis for their exclusion from evidence." *Stiles v. State*, 672 So. 2d 850, 851-52 (Fla. 4th DCA 1996). Nevertheless, the self-serving nature of the statement is still a factor that can be considered when determining whether the statement was fabricated. *See Sunn v. Colonial Penn Ins. Co.*, 556 So. 2d 1156, 1157 (Fla. 3d DCA 1990) (noting that one of the factors to be analyzed in determining whether a statement qualifies as an excited utterance includes "whether the statement is self-serving"); 2 McCormick on Evidence, § 272 (7th ed.) ("Although not grounds for automatic exclusion, evidence that the statement . . . was self-serving is an indication that the statement was the result of reflective thought.") (footnotes omitted).

To this end, we find persuasive two federal cases that have touched upon this issue, albeit in dicta. *See United States v. Moore*, 791 F.2d 566, 571 (7th Cir. 1986); *United States v. Knife*, 592 F.2d 472 (8th Cir. 1979). In *Knife*, the Eighth Circuit Court of Appeals opined that where there was evidence that the declarant had planned the shooting of the victim at a particular time, which then took place, that "it would be difficult to believe that the preplanned shooting . . . was an event so startling or unexpected as to suspend the defendant declarant's powers of reflection." In *Moore*, the Seventh Circuit Court of Appeals noted that "[t]he statement in *Knife* assumes that the timing, location and circumstances of the [startling] event . . . were within the declarant's control." But, the Seventh Circuit declined to apply it because the declarant in *Moore* did not have the requisite control over the event in question. Here, the defendant clearly had the requisite control over the time, location and circumstances of the shooting.

For these reasons, we find the trial court did not abuse its discretion in excluding the 911 call as hearsay. Moreover, because of this, we find no reversible error in the lower court's decision also to exclude testimony that the defendant's neighbor . . . heard the defendant making the 911 call.

230 So. 3d at 91-92 (footnote and other citations omitted).

11

The instant case is distinguishable from *Beckman*. In *Beckman*, the state presented credible evidence that the defendant had pre-planned the shooting (the startling event) and contrived the 911 call (the out-of-court statement). In the instant case, no evidence existed that the defendant had pre-planned the altercation and stabbing (the startling event) or contrived his statement to the hotel employee (the out-of-court statement). Thus, the trial court in the instant case erred in excluding from the jury's consideration the hotel employee's proffered recitation of the defendant's alleged excited utterance.

## F. *The Error Was Not Harmless*

"The harmless error test . . . places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." *State v. DiGuilio*, 491 So. 2d 1129, 1138 (Fla. 1986).

Here, the state has not met that burden. Witness credibility was critical in this case because no physical evidence or eyewitness testimony corroborated the alleged victim's version of the events. Although the defendant was permitted to testify about his alleged excited utterance to the hotel employee, the hotel employee's proffered recitation of the defendant's alleged excited utterance may have, in the jurors' minds, corroborated the defendant's testimony and supported his self-defense claim. Given that possibility, the state cannot meet its burden to establish that the error in excluding the hotel employee's testimony was harmless.

## Conclusion

Based on the foregoing, we reverse the defendant's conviction and sentence and remand for a new trial. On all other evidentiary arguments which the defendant raised in this appeal, we affirm without further discussion. The sentencing argument which the defendant raised in this appeal is rendered moot by our reversal and remand for a new trial.

*Reversed and remanded for new trial.*

WARNER and FORST, JJ., concur.

\*        \*        \*

**Not final until disposition of timely filed motion for rehearing.**

12